UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATASHA PFAFF,

      Plaintiff,

v.

STATE OF WASHINGTON;
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, *et al.*,

      Defendants.

_____

LEYA REKHTER, *et al.*,

      Plaintiffs,

v.

STATE OF WASHINGTON
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, *et al.*,

      Defendants.

Case No. C07-5280RJB

Case No. C07-5306RJB

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

This matter comes before the court on Class Plaintiffs' Motion for Partial Summary Judgment (Dkt. 77) and on defendants' Motion for Partial Summary Judgment re: Medicaid Act Claims (Dkt. 78). The court has considered the motions, responses to the motions, and the remainder of the file herein; and heard oral argument on May 27, 2008.

PROCEDURAL HISTORY

On May 4, 2007, *Rekhter* v. *State of Washington, et al.* (*Rekhter*) was filed in Thurston County Superior Court, cause number 07-2-00895-8. Dkt. 1, Exhibit A. On June 20, 2007, the *Rekhter* case was removed to federal court. Dkt. 1. On May 8, 2007, *Pfaff v. Arnold-Williams*, (*Pfaff*) was filed in Thurston County Superior Court under cause number 07-2-00911-3. Dkt. 1, Exhibit A. On May 18, 2007, Ms. Pfaff filed a First Amended Complaint (Class Action). Dkt. 1, Exhibit B. On June 6, 2007, the *Pfaff* case was removed to federal court. Dkt. 1, Exhibit B.

A third case, *SEIU 775 v. Robin Arnold-Williams*, King County No. 07-2-17710-8SEA, was filed

ORDER
Page - 1

in King County Superior Court during May of 2007. On December 13, 2007, Judge Armstrong of the King County Superior Court stayed *SEIU 775* pending resolution of *Rekhter* and *Pfaff*. Dkt. 66.

On August 17, 2007, this court consolidated the *Pfaff* and *Rekhter* cases and ordered that future documents be filed in the *Pfaff* case. Dkt. 26, at 8.

On November 27, 2007, the court granted Plaintiff Pfaff's Motion for Certification of the Class of Medicaid Beneficiaries and Plaintiff Rekhter's Motion for Class Certification. Dkt. 57. The Order stated that the motions were granted insofar as the classes are certified only for purposes of determining whether defendants are liable to plaintiffs. Dkt. 57. Gregory A. McBroom and Kevin B. Hansen of Livengood Fitzgerald & Alskog were appointed as class counsel. Dkt. 57, at 12.

On December 14, 2007, the court granted the parties' stipulation to amend the class definition. Dkt. 65. The class definition is as follows:

> 1. All persons who (1) were determined eligible for Medicaid funded in-home personal care assistance and (2) had their base hours adjusted by fifteen percent because of the operation of Wash. Admin. Code § 388-106-130(b)(3) (or its predecessor), except to the extent that they (3) requested an adjudicative proceeding pursuant to Wash. Rev. Code § 74.08.080 challenging the downward adjustment and have received or will receive back benefits as a result.
>
> 2. All providers of Medicaid-funded in-home personal care employed by persons who (1) were determined eligible for Medicaid funded in-home personal care assistance and (2) had their base hours adjusted by fifteen percent because of the operation of Wash. Admin. Code § 388-106-130(b)(3) (or its predecessor), except to the extent that they (3) requested an adjudicative proceeding pursuant to Wash. Rev. Code § 74.08.080 challenging the downward adjustment and have received or will receive back benefits as a result.

Dkt. 65, at 2-3.

## FIRST AMENDED CLASS ACTION COMPLAINT

On January 14, 2008, plaintiffs filed a First Amended Class Action Complaint (Dkt. 68), which is the complaint now before the court. The first amended complaint named as defendants the State of Washington; the Department of Social and Health Services (DSHS); Robin Arnold-Williams, Secretary of DSHS, in her individual and official capacities; Dennis Braddock, former Secretary of DSHS, in his individual and official capacities; Kathy Leitch, Assistant Secretary for the Aging and Disability Services Administration, in her individual and official capacities; and Jane and John Doe Nos. 1 thru [sic] 100. Dkt. 68, at 1-2.

The amended complaint alleges the following causes of action on behalf of Medicaid recipients and their care providers: (1) Medicaid Comparability Statute, 42 U.S.C. § 1396a(a)(10)(B), 42 C.F.R. §

440.240(b) and 42 C.F.R. § 440.230(b)(Comparability Claim); (2) Fifth Amendment constitutional taking, incorporated through the Fourteenth Amendment (federal constitutional takings claim); (3) Civil Rights Acts claims, pursuant to 42 U.S.C. § 1983; (4) Title II of the Americans with Disabilities Act, 42 U.S.C. Chapter 126 and 28 C.F.R. Part 35 (ADA claim); (5) Section 504 of the Rehabilitations Act of 1973, 29 U.S.C. § 1984 (RA claim); (6) Federal Impairment of Contracts, U.S. Constitution, Article I, § 10 (federal impairment of contracts claim); (7) breach of contract (state breach of contract claim); (8) Washington wage laws, chapter 49.52 RCW (Washington wage claim); (9) unjust enrichment; and (10) quantum meruit. Dkt. 68.

In their causes of action in the first amended complaint, plaintiffs do not list a specific cause of action under the Medicaid Choice of Provider provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(23). However, in ¶ 1.13 of the first amended complaint, plaintiffs allege as follows: "Further, Medicaid laws do not permit DSHS to restrict a Medicaid recipient's choice of a willing an qualified care provider in the manner prescribed by the Shared Living Rule." Dkt. 68, at 5. The first amended complaint also references the Medicaid Choice of Provider requirements in ¶ 2.26. Dkt. 68, at 12. Plaintiffs have arguably stated a claim that the Shared Living Rule violated the Medicaid Act Choice of Provider requirements. In addition, the parties addressed the Medicaid Choice of Provider issues in their briefing and documentation submitted in support of and in response to the pending motions. Accordingly, the court assumes that plaintiffs have pled a claim in the first amended complaint that the Shared Living Rule violated the Medicaid Choice of Provider requirements.

The claims at issue in these pending motions are plaintiffs' claims in the first amended complaint, brought under 42 U.S.C. § 1983, that the Shared Living Rule violated the Medicaid Comparability and Choice of Provider requirements. All other claims remain pending.

## MEDICAID COMPARABILITY AND CHOICE OF PROVIDER REQUIREMENTS

1. *Medicaid Comparability requirements.* 42 U.S.C. § 1396a(a)(10)(B)(i) provides that a State plan for medical assistance must provide

> (B) that the medical assistance made available to any individual described in subparagraph (A)--
>
> > (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual[.]

2. *Medicaid Choice of Provider requirements.* 42 U.S.C. § 1396a(a)(23) provides that a State

ORDER
Page - 3

plan for medical assistance must

> provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability on a prepayment basis), who undertakes to provide him such services[.]

## MEDICAID FUNDED PROGRAMS AND SHARED LIVING RULE

This case involves claims on behalf of classes of recipients of personal care services and providers of personal care services through four public assistance programs administered by defendant Washington State Department of Social and Health Services (DSHS). The four programs are: (1) the Community Options Program Entry System (COPES)(42 U.S.C. § 1396n(c) and RCW § 74.39A.030(2)); (2) the Medicaid Personal Care (MPC) program (42 U.S.C. § 1396d(a)(24) and RCW 74.l09.520(2)); (3) the Medically Needy In-Home Waiver program (42 U.S.C. § 1396n(c), RCW 74.09.700(2)(a)(i) and RCW 74.39.041(1)); and (4) the Chore Program (RCW 74.39A.220). While each program is somewhat different, they all have both functional disability and financial eligibility standards that recipients must meet in order to be eligible for benefits. The first three programs are Medicaid programs for which the federal government reimburses slightly more than fifty percent of the state's expenditures. The Chore Program is entirely state funded.

Under these programs, DSHS pays for eligible recipients to receive assistance with activities of daily living such as bathing, dressing, eating, and toilet use. These services are designed to enable the recipients to reside in their homes instead of in institutional settings. Recipients who are developmentally disabled receive services through the DSHS Division of Developmental Disabilities, and other disabled adults receive services through the DSHS Division of Aging. The methodology of determining the level of personal assistance for which the recipient is eligible is the same for all recipients.

The standard assessment process used by DSHS for determining both eligibility and the number of hours of assistance that will be provided is known as the Comprehensive Assessment and Reporting Evaluation (CARE) process. The CARE process is set forth in WAC 388-106-0080 through -0145. Prior to June 29, 2007, pursuant to former WAC 388-106-130(3)(b), recipients who chose to have providers who lived with them received fifteen percent fewer hours of paid assistance than those recipients whose providers were not part of the recipients' households. This was known as the Shared Living Rule.

## *JENKINS* CASE

ORDER
Page - 4

1   In *Jenkins v. Washington State Dept. Of Social and Health Services*, 160 Wn.2d 287 (2007), the
2   Washington Supreme Court resolved three different administrative appeals of DSHS decisions determining
3   the number of hours that individual recipients were eligible for under the COPES and MPC programs.
4   The first two cases involved two recipients of Medicaid-funded home health care, Venetta Gasper
5   and Tommye Myers, who filed actions in Thurston County Superior Court, seeking review of
6   administrative decisions and a declaratory judgment invalidating the Shared Living Rule. The two cases
7   were consolidated. The trial court invalidated the Shared Living Rule and reversed the two administrative
8   decisions, ruling that DSHS exceeded its statutory authority by violating federal choice of provider
9   protections and comparability requirements. *See Gasper-Myers v. DSHS*, 132 Wn.App. 42, 48-49 (2006).
10  On appeal, the Washington Court of Appeals, Division 2, held that the Shared Living Rule violated the
11  Medicaid Comparability requirements but did not violate the Medicaid Choice of Provider requirements.
12  *See Id.* DSHS filed a petition for review with the Washington Supreme Court.
13  In the third case, David Jenkins, a recipient of Medicaid-funded home health care, filed suit in King
14  County Superior Court, appealing an adverse administrative decision. *See Jenkins v. Washington State*
15  *Dept. Of Social and Health Services*, 160 Wn.2d at 294. The King County Superior Court held that the
16  Shared Living Rule violated Medicaid Comparability requirements. The *Jenkins* case was certified to the
17  Washington Supreme Court for direct review; the Washington Supreme Court consolidated *Jenkins* with
18  *Gasper-Myers* and granted review. *Id.* at 294.
19  Plaintiffs in *Jenkins* presented the following claims to the Washington Supreme Court: (1) violation
20  of the federal Medicaid Comparability requirements under 42 U.S.C. § 1396; (2) violation of the federal
21  Medicaid free Choice of Provider guaranty under 42 U.S.C. § 1396; (3) violation of Title II of the
22  Americans with Disabilities Act of 1990 under 42 U.S.C. § 12132; (4) violation of the privileges and
23  immunities clause under article I, section 12 of the Washington Constitution; (5) violation of the equal
24  protection clause of the fourteenth amendment to the United States Constitution; and (6) violation of the
25  due process clause of the fourteenth amendment to the United States Constitution. *Id.* at 290.
26  On May 3, 2007, the Washington Supreme Court, in a 5-3 decision, held that former WAC 388-
27  106-0130(b)(3) (the Shared Living Rule) violated the Medicaid Comparability requirements of 42 U.S.C. §
28  1396a(a)(10)(B)(i). The majority in *Jenkins* held that (1) the Shared Living Rule was invalid to the extent

1  that it presumed that certain needs of the recipient are met without an individualized determination, and
2  that the presumption results in an automatic fifteen percent reduction in the recipient's assessed number of
3  allotted care hours based only on the fact that the recipient lives with a caregiver; and (2) the COPES
4  program was not exempt from the federal comparability requirements. *Id*. at 300-301.

5  Three justices dissented from the majority in *Jenkins*, concluding that the Shared Living Rule does
6  not violate Medicaid Comparability requirements. The dissenting justices opined that (1) the court should
7  have deferred to the DSHS interpretation of the Medicaid Comparability requirements and the adoption of
8  the Shared Living Rule; (2) the Shared Living Rule was developed as part of a "uniform system for
9  assessing functional disability to support equitable allocation of the State's all-too-limited resources across
10 the pool of eligible recipients" (*Id.* at 310); (3) the Shared Living Rule operates as only one of the many
11 irrebutable presumptions that comprise the CARE tool; (4) the entire CARE process is based on
12 presumptions and approximations, regardless whether an individual does or does not live with his or her
13 caregiver; and (5) because the majority had not demonstrated a principled basis for distinguishing between
14 the Shared Living Rule and other CARE tool rules, and given the most minimal deference to DSHS'
15 expertise, the Shared Living Rule did not violate Medicaid Comparability requirements. *Id.*

16 The Washington Supreme Court remanded the case "for determination, consistent with the opinion,
17 of the amount of personal care hours DSHS wrongfully withheld from the respondents for their unmet
18 need for assistance with housekeeping, shopping, meal preparation services, and wood supply, retroactive
19 to the date the shared living rule was applied to their cases." *Id.* at 302-03.

20 DSHS repealed the Shared Living Rule on an emergency basis, effective June 29, 2007 (Dkt. 7-2),
21 and on a permanent basis, effective February 22, 2008 (Wash. State Register No. 08-03-111).

22 DSHS filed a motion for reconsideration in *Jenkins*, seeking clarification as to whether the remand
23 was to the superior courts that heard the administrative appeals or to DSHS pursuant to RCW 34.05.574.
24 Dkt. 77 at 4. On August 16, 2007, the Washington Supreme Court denied DSHS' motion for
25 reconsideration. Dkt. 77 at 4.

26
27                          MOTIONS FOR SUMMARY JUDGMENT
28 The pending motions deal only with plaintiffs' claims that the Shared Living Rule violated Medicaid

Comparability and Choice of Provider requirements. The remaining claims and issues may be addressed later, by motion or at trial.

*Plaintiffs' Motion for Partial Summary Judgment (Dkt. 77).* On April 10, 2008, plaintiffs filed a motion for partial summary judgment, contending (1) that the court should apply the doctrine of collateral estoppel to the *Jenkin*s decision, and should determine that the only remaining issue is the amount of retroactive compensatory relief to be provided to the classes; or, (2) in the alternative, that the court should find that the Shared Living Rule violates the Medicaid Comparability requirements. Dkt. 77, at 7.

Defendants oppose plaintiffs' motion for partial summary judgment, arguing that (1) Ninth Circuit precedent precludes application of offensive non-mutual collateral estoppel against a state agency; (2) the Shared Living Rule did not violate the Medicaid Comparability or Choice of Provider requirements; (3) because DSHS is not a person for purposes of 42 U.S.C. § 1983, plaintiffs cannot state a claim for damages against DSHS and employees acting in their official capacity; (4) DSHS officials and employees, sued in their individual capacities, are protected from claims for damages by qualified immunity; (5) there is no proof that members of the recipient class have suffered actual harm as result of the alleged violation of the Medicaid Act; and (6) application of equitable estoppel is not warranted under the circumstances of this case. Dkt. 110.

*Defendants' Motion for Partial Summary Judgment re: Medicaid Claims (Dkt. 78).* On April 11, 2008, defendants filed motion for partial summary judgment on the claims under the Medicaid Act, contending that (1) providers of Medicaid services so not have standing to seek relief under 42 U.S.C. § 1983 for violation of the Medicaid Comparability Requirement under 42 U.S.C. § 1396a(A)(10)b), or the Medicaid Choice of Provider requirements, 42 U.S.C. § 1396a(a)(23); (2) recipients of Medicaid funded in-home personal care services do not have a claim for violation of the Medicaid comparability requirement under 42 U.S.C. § 1396a(a)(10)(B) because the recipient class representatives received all of the services identified in their individual service plans; (3) it is not a violation of the Medicaid Comparability Requirements to pay live-in providers less than out-of-home providers because in-home providers also receive personal benefit from some of the services; (4) the Shared Living Rule did not violate the Medicaid Choice of Provider requirements of 42 U.S.C. § 1396a(a)(23) because the recipient class representatives were not prevented from receiving services from their preferred providers; (5) it is not a violation of the

Medicaid Choice of Provider requirements to pay live-in providers less than out-of-home providers because the in-home providers also receive personal benefit from some of the services; (6) the State of Washington, DSHS, the current and former Secretary of DSHS, and the Assistant Secretary of DSHS are not persons for purposes of 42 U.S.C. § 1983; (7) executives of a state agency are immune from liability for money damages under 42 U.S.C. § 1983 for exercising the agency's delegated rule making power; and (8) officers and employees of DSHS who are sued in their individual capacities are entitled to qualified immunity for damages because, at the time they took the alleged actions, the law was not clearly established that the conduct violated either statutory or constitutional provisions. Dkt. 78, at 15-16.

In their response to defendants' motion for partial summary judgment on the Medicaid Act claims, plaintiffs(1) concede that the provider class is not entitled to monetary damages under 42 U.S.C. § 1983 for claims based on violation of the Medicaid Act; (2) contend that collateral estoppel bars defendants from relitigating the *Jenkins* decision that held the Shared Living Rule violated Medicaid Comparability requirements; (3) contend that the Shared Living Rule violated Medicaid Comparability requirements because it led to a disparate impact on care recipients in the amount of paid personal care services they received from the Medicaid program; (4) argue that providers should not be penalized for providing services in good faith even though defendants failed to compensate them fully for those services; (5) contend that, in the *Jenkins* decision, the Washington Supreme Court was correct in its legal analysis; (6) maintain that this court should find the Shared Living Rule invalid because defendants acted arbitrarily and capriciously when DSHS promulgated the Shared Living Rule; the draft time study that resulted in the Shared Living Rule was flawed and meaningless; the Shared Living Rule overshoots its intended purpose and substantially impairs a care recipient's ability to get his or her needs met in the home; (7) contend that the Shared Living Rule violates the Medicaid Choice of Provider requirements by means of unreasoned governmental intrusion; (8) argue that state law guarantees free provider choice; (9) concede that the State and individual defendants in their official capacities may not be sued for money damages under 42 U.S.C. § 1983, but argue that individual defendants in their official capacities are not immune from suit for injunctive relief; and (10) contend that the defendants who are sued in their personal capacities for damages are not entitled to qualified immunity because it was clearly established law that a state could not discriminate between individuals in providing medical assistance under Medicaid. Dkt. 113.

*Amicus Curiae.* On May 23, 2008, the court granted the motion of SEIU 775NW, plaintiff in

*SEIU 775 v. Robin Arnold-Williams*, King County No. 07-2-17710-8SEA, to file a brief of *amicus curiae*, provided that the court would consider only the argument section of the brief. Dkt. 134. SEIU 775NW contends that this court should apply the doctrine of issue preclusion to the determination of the Washington Supreme Court in *Jenkins* that the Shared Living Rule is unlawful under the Medicaid Act, and that this court should not make an independent analysis of whether the Shared Living Rule violated the Medicaid Act. Dkt. 81-2.

## DISCUSSION

*1. Provider Cause of Action under Medicaid Act*

The provider class seeks monetary damages under 42 U.S.C. § 1983 for violation of the Medicaid Comparability and Choice of Provider requirements. Defendants request that the court dismiss the providers' claims under Section 1983 for violation of the Medicaid Act.

42 U.S.C. § 1396a(10)(A) provides that a State plan must provide for "making medical assistance available" for "care and services" to (i) "all individuals" and (ii) "groups of individuals" who are categorized in 1396a(1)(A).

The typical remedy for state noncompliance with federally imposed conditions is action by the federal government to terminate funds to the state, not a private cause of action for noncompliance. *Pennhurst State Sch. And Hosp. v. Halderman*, 451 U.S. 1 (1981). However, an unambiguously conferred right can support a cause of action brought under 42 U.S.C. § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002). The question whether Congress intended to create a private right of action is definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class. *Id*. at 283-84. Although addressing a different provision of the Medicaid Act than those provisions at issue in this case, the Ninth Circuit, in *Sanchez v. Johnson*, 416 F.3d 1051, 1059 (9th Cir. 2005), held that 42 U.S.C. § 1396a(30)(A), which requires a state Medicaid plan to provide efficient, economical, quality medical care and adequate access to providers, does not create individual rights for providers and recipients that are enforceable under 42 U.S.C. § 1983.

Defendants concede that 42 U.S.C. § 1396a(10)(A) creates a private right of action for recipients of Medicaid services, but contend that providers do not have standing to pursue claims for violation of the Medicaid Comparability or Choice of Provider requirements. In their response to defendants' motion for partial summary judgment re: Medicaid claims, plaintiffs concede that 42 U.S.C. §§ 1396a(10) and

1396a(a)(23) do not confer a private right of action to providers of Medicaid services for a state's alleged violation of those provisions. Pursuant to the applicable law, claims for damages made by the providers under the Medicaid Comparability and Choice of Provider requirements should be dismissed.

*2. Collateral Estoppel and Merits of Medicaid Comparability and Choice of Provider Claims*

Plaintiffs contend that the court should apply collateral estoppel to the issue, as decided in *Jenkins*, whether the Shared Living Rule violated Medicaid Comparability requirements; or, in the alternative, that the court should determine that the Shared Living Rule violated Medicaid Comparability requirements. Dkt. 77. Defendants maintain that the court is not bound by the Washington Supreme Court's *Jenkins* decision interpreting a federal statute and that the court should make an independent determination whether the Shared Living Rule violated Medicaid Comparability requirements; and that the Shared Living Rule did not violate either the Comparability or Choice of Provider requirements. Dkt. 78.

The court has carefully considered whether it is necessary or appropriate to rule on the merits of the Medicaid Comparability and Choice of Provider claims at this stage of the proceedings. Under Fed.R.Civ.P. 1, the court should apply the rules of civil procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." A ruling on the merits of these claims, including whether the court should apply collateral estoppel to the *Jenkins* decision, is unnecessary to the decision on whether plaintiffs' Medicaid Act claims under 42 U.S.C. § 1983 should be dismissed on summary judgment. *See Sklar v. C.I.R.*, 282 F.3d 610, 614 n.3 (9th Cir. 2002), quoting *Anderson v. United States,* 417 U.S. 211, 218 (1974) ([it is] "inadvisable ... to reach out in this fashion to pass on important questions of statutory construction when simpler, and more settled, grounds are available for deciding the case at hand"). Accordingly, in light of the court's discussion below, concluding that the Medicaid claims under 42 U.S.C. § 1983 should be dismissed on other grounds, a ruling on collateral estoppel or the merits of the Medicaid Comparability and Choice of Provider claims would be gratuitous. At some point in this litigation, a ruling on those claims may be appropriate, depending on the issues presented by motion or at trial. Accordingly, the court should decline to rule on the issues whether to apply collateral estoppel to the decision in *Jenkins* and whether the Shared Living Rule violated Medicaid Comparability and Choice of Provider requirements.

*3. Official Capacity Claims for Damages for Section 1983 Claims Based upon Medicaid Act*

Plaintiffs seek monetary relief under the Medicaid Act pursuant to 42 U.S.C. § 1983. Defendants

contend that all damages claims under 42 U.S.C. § 1983 against the State of Washington, DSHS, and defendants Arnold-Williams, Braddock and Leitch in their official capacities should be dismissed. Plaintiffs concede that damages are not available for claims against the State, DSHS or employees named in their official capacities. Dkt. 113, at 30.

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978). In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989), the U.S. Supreme Court held concluded that "a State is not a person within the meaning of § 1983," and that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and thus is] no different from a suit against the State itself." Accordingly, under the law, and as plaintiffs concede, the State, DSHS, and defendants Arnold-Williams, Braddock, and Leitch, who were acting in their official capacities for purposes of adopting and implementing the Shared Living Rule, can not be held liable for damages under 42 U.S.C. § 1983 for these acts. Plaintiffs' claims for damages under 42 U.S.C. § 1983, based on the Medicaid Comparability and Choice of Provider requirements, should be dismissed.

*3. Qualified Immunity for Section 1983 Claims Based upon Medicaid Act*

Defendants contend that the defendants Arnold-Williams, Braddock, and Leitch, to the extent that they are named in the personal capacities, are entitled to qualified immunity from civil damages for claims based upon the Medicaid Act. Dkt. 78, at 27-30. Defendants maintain that, even if the *Jenkin*s court was correct, the law was not clearly established at the time the Shared Living Rule was adopted. *Id.* Plaintiffs

argue that these defendants are not entitled to qualified immunity because it was clearly established at the time the Shared Living Rule was adopted that "there were numerous other cases that had clearly established that a state could not discriminate between individuals in providing medical assistance under Medicaid." Dkt. 113, at 31.

Defendants in an action under 42 U.S.C. § 1983 are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable official could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional [or statutory] right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *See Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id*.

In the first step of the qualified immunity analysis, the court must determine whether a right, in this case a statutory right, would have been violated on the facts alleged, taken in the light most favorable to plaintiffs. In this case, the court assumes, without deciding, that the *Jenkins* court was correct in concluding that the Shared Living Rule violated the Medicaid Comparability requirements. The next step of the analysis is whether that law was clearly established at the time the DSHS officials adopted and implemented the Shared Living Rule.

Plaintiffs are correct in setting forth the clearly established Medicaid Comparability law: Under 42 U.S.C. § 1396a(10)(A), a state plan for medical assistance must provide for making medical assistance

ORDER
Page - 12

available to all individuals receiving aid or assistance under any plan of the State; and, under 42 U.S.C. § 1396a(10)(B)(i), the medical assistance made available to any such individual shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual.  The cases cited by plaintiffs are factually distinguishable from this case, however, because they do not address the issue of whether a state may adopt a particular plan–and what the limits of that plan may be–for assessing the number of hours that a particular recipient requires to meet that recipient's needs.  *See Roe v. Casey*, 464 F.Supp. 487, 494 (E.D.Pa. 1978)(state statute prohibiting payment of state medical assistance funds for medically necessary abortions for women otherwise eligible to receive medical assistance, except in cases where abortion was necessary to save life of mother, arbitrarily discriminates against medically necessary abortions on the basis of the diagnosis, type of illness or condition involved, in violation of Medicaid Act); *Becker v. Toia*, 439 F.Supp. 324, 333 (S.D.N.Y. 1977)(preliminary injunction granted, enjoining enforcement of state statute imposing on Medicaid beneficiary obligation to make copayment on prescription drugs and medical services; *White v. Beal*, 555 F.2d 1146 (3rd Cir. 1977)(state regulations that restrict provision of eyeglasses based on cause of disability and not on medical necessity invalid under Medicaid Act).

Defendants note that other states have differentiated among providers in determining both who would be eligible paid providers and the rates at which they would be provided.  For example, New York does not pay spouses or children, including sons and daughters-in-law, for providing in-home care (18 NYCRR 505.14(h)(2), while Oregon limits payments to spouses (ORS 411.803 and OAR 411-030-080).  This court makes no determination whether New York or Oregon's requirements comply with Medicaid requirements.  What is significant is that the fifteen reduction in paid hours allotted to recipients of Medicaid Services who resided with their providers, even if it is assumed that that reduction, pursuant to the Shared Living Rule, violated the Medicaid Comparability requirements, was not clearly established at the time the Shared Living Rule was adopted.

Further, the *Jenkins* decision itself shows that the right at issue was not clearly established.  Although the majority of the justices in *Jenkins* agreed that the Shared Living Rule violated the Medicaid Comparability requirements, three justices, in a thorough, cogent and persuasive dissent, concluded that the majority had not demonstrated a principled basis for distinguishing between the Shared Living Rule and

1  other CARE tool rules, and given the most minimal deference to DSHS' expertise, the Shared Living Rule
2  did not violate Medicaid Comparability requirements. Thus, at the time the *Jenkins* and *Gasper-Myers*
3  cases were wending their way through the state courts, the law was not clearly established that the Shared
4  Living Rule, implemented through the CARE assessment process, violated Medicaid Comparability
5  requirements.

6  Regarding the Medicaid Choice of Provider claim, in *Gasper -Myers v. DSHS*, the Court of
7  Appeals concluded that the Shared Living Rule did not violate the Medicaid Act because recipients cannot
8  claim that a state has violated their right to the provider of choice when providers refuse or discontinue
9  service because of low rates. *Gasper-Myers v. DSHS*, 132 Wn.App. at 57-58.  The *Gasper-Myers* court
10 further concluded that forcing a recipient to change caregivers or to physically relocate when the current
11 care provider is no longer willing or qualified does not violate the Medicaid Choice of Provider
12 requirements, citing *O'Bannon*, 447 U.S. at 785; *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 178 (2nd Cir.
13 1991). *Id.* at 58.  Plaintiffs have cited no authority to show that it was clearly established that the Shared
14 Living Rule violated Medicaid Choice of Provider requirements at the time the Shared Living Rule was
15 adopted and implemented.  Moreover, the Medicaid Regulations provide that states may establish fees it
16 will pay providers and standards relating to provider qualifications (42 C.F.R. § 431.51(c)), and also
17 provide that, if a particular provider decides to stop serving a Medicaid recipient, he or she is no longer
18 "qualified" or "willing" to "undertake" those services (42. C.F.R. § 431.51(b)).  *See also Antrican v. Buell*,
19 158 F.Supp. 2d 663, 671 (E.D.N.C. 2001), *partially aff'd on other grounds sub. nom. Antrican v. Odom*,
20 290 F.3d 178 (4th Cir. 2002, *cert. den.*, 537 U.S. 973 (2002)(Section 1396a(a)(23)(A) does not encompass
21 the right to free access to doctors unwilling to service Medicaid patients; while the government is
22 prohibited from blocking access to qualified providers willing to provide the services, § 1396a(a)(23)(A)
23 does not impose on states an affirmative duty to ensure that plaintiffs have a large pool of dentists from
24 which to choose).        At the time the Shared Living Rule was adopted, or was in effect, it was not clearly
25 established that the Shared Living Rule, implemented through the CARE assessment process, violated
26 Medicaid Choice of Provider requirements.  The individual defendants named in their personal capacities
27 are entitled to qualified immunity for damages on the claim that the Shared Living Rule violated the
28 Medicaid Choice of Provider requirements.

ORDER
Page - 14

The claims for damages under 42 U.S.C. § 1983, based upon the Medicaid Comparability requirements and Medicaid Choice of Provider requirements, should be dismissed.

*5. Claims for Injunctive Relief for Section 1983 Claims Based upon Medicaid Act*

In their first amended complaint, plaintiffs request, among other things, the following relief: (1) "To prevent irreparable harm, impose a permanent injunction to enjoin DSHS from applying the Shared Living Rule on a prospective basis"; and (2) invalidate the Shared Living Rule. Dkt. 68, at 22.

Under *Will v. Mich. Dep't of State Police*, 491 U.S. at 71 n. 10, a state official in his or her official capacity, when sued for injunctive relief, as distinguished from a suit for damages, would be a person under 42 U.S.C. § 1983, because official-capacity actions for prospective relief are not treated as actions against the State. Further, the *Ex Parte Young* exception to Eleventh Amendment immunity allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute. *See Ex Parte Young,* 209 U.S. 128, 159 (1908) (enjoining enforcement of a State statute found to violate the U.S. Constitution); *Green v. Mansour,* 474 U.S. 64, 68 (1985) (applying *Ex Parte Young* to an action involving State violation of a federal statute). This exception to sovereign immunity is based on the idea that a State officer who acts in violation of the Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex Parte Young,* 209 U.S. at 160.

At the oral argument on May 27, 2008, the court posed the following question to plaintiffs' counsel: "What is the nature of the injunctive relief that you are asking for under the Medicaid claims[?]".

> MR. HANSEN: The injunctive relief, obviously we can't enjoin the application of the Shared Living Rule, because that's already been repealed.
>   The injunctive relief would deal with the enjoining the State from applying any kind of presumptive–what's the word I am looking for, basically withholding paid support or paid care based on any presumption that do [sic] not take into account the individual needs of the care recipients.
>
> THE COURT: okay.
>
> MR. MCBROOM: He said it better than me, because I just don't want to see the Shared Living Rule ever again.

The Shared Living Rule was repealed and is no longer in effect. There is not showing of any likelihood that it–or any similar rule–might be adopted in the future, particularly in light of the Washington Supreme Court's decision in *Jenkins*. Accordingly, any claim for injunctive relief is moot. The claims in

this case relate to the Shared Living Rule, which is a much narrower issue than that suggested by Mr. Hansen during oral argument: that the injunctive relief would relate to withholding paid care based on *any* presumption that does not take into account the individual needs of the care recipients. Plaintiffs' claims for injunctive relief under 42 U.S.C. § 1983, based upon violation of the Medicaid Comparability and Choice of Provider claims, should be dismissed.

*6. Receipt of Services*

In their motion for partial summary judgment, defendants contend that plaintiffs do not have a claim under the Medicaid Act because they received all of the services called for in their plans of care. Because a ruling on this issue is unnecessary to the decision whether plaintiffs' Medicaid Act claims under 42 U.S.C. § 1983 should be dismissed on summary judgment, the court need not rule on this issue.

*7. Conclusion*

Class Plaintiffs' Motion for Partial Summary Judgment (Dkt. 77), which requests that the court apply collateral estoppel to the holding in *Jenkins*, and, in the alternative, that the court find the Shared Living Rule invalid under the Medicaid Comparability requirements, should be denied. Defendants' Motion for Partial Summary Judgment re: Medicaid Act Claims (Dkt. 78) should be granted, and all claims, pursuant to 42 U.S.C. § 1983, that the Shared Living Rule violated the Medicaid Comparability and Choice of Provider requirements, should be dismissed. This order does not preclude any of the parties from raising issues related to the Shared Living Rule, the applicability of the *Jenkins* decision, or Medicaid Comparability and Choice of Provider requirements, as they relate to other claims and defenses.

## CASE MANAGEMENT

With the dismissal of plaintiffs' claims under 42 U.S.C. § 1983 for violation of the Medicaid Act, the remaining federal claims are the constitutional takings claim; the ADA claim; the Rehabilitation Act claim; and the federal impairment of contracts claim. The remaining state law claims are the state breach of contract claim, the Washington wage claim, unjust enrichment, and quantum meruit. At oral argument, the parties indicated that they intended to file dispositive motions on the remaining claims. It appears that, in the interest of efficient case management, dispositive motions regarding the federal claims should be presented and decided before dispositive motions are raised on the state claims. The parties should be directed to file any dispositive motions regarding the federal claims as soon as it is feasible for the parties

to file and respond to those motions. If either party believes that dispositive motions on the federal claims are premature, that party may raise that issue by motion.

Therefore, it is hereby

**ORDERED** that Class Plaintiffs' Motion for Partial Summary Judgment (Dkt. 77) is **DENIED** Defendants' Motion for Partial Summary Judgment re: Medicaid Act Claims (Dkt. 78) is **GRANTED**. All claims that the Shared Living Rule violated the Medicaid Comparability requirements, 42 U.S.C. § 1396a(a)(10)(B)(i), and the Medicaid Choice of Provider requirements, 42 U.S.C. § 1396a(a)(23), pursuant to 42 U.S.C. § 1983, are **DISMISSED WITH PREJUDICE**. Not later than July 11, 2008, the parties are **ORDERED** to file dispositive motions on the remaining federal claims, or to show cause why those motions should not be filed by that date.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 29th day of May, 2008.

*Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge