1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                            AT TACOMA
9   NATASHA PFAFF,
                                              CASE NO. C07-5280RJB
10                Plaintiff,

11        v.

12  STATE OF WASHINGTON;
    DEPARTMENT OF SOCIAL AND
13  HEALTH SERVICES, *et al.*,

14                Defendants.
    _____
15
    LEYA REKHTER, *et al.*,
16
                  Plaintiff,
17                                            CASE NO. C07-5306RJB
          v.
18
    STATE OF WASHINGTON                       ORDER ON MOTIONS
19  DEPARTMENT OF SOCIAL AND                  FOR SUMMARY
    HEALTH SERVICES, *et al.*,                JUDGMENT AND
20                                            ORDER OF REMAND
                  Defendants.
21

22        This matter comes before the Court on Defendants' Motion for Partial Summary

23  Judgment Regarding Remaining Federal Claims (Dkt. 167) and on Class Plaintiffs' Omnibus

24  Motion for Partial Summary Judgment on Federal Claims (Dkt. 168). The Court has considered

25  the motions, responses to the motions, and the remainder of the file herein.

26        In this order, the Court has gone to substantial effort to set out the parties' positions on

27  the various issues in the "Discussion" section beginning at page ten. Those sections of the

28

opinion may not be necessary reading for all interested parties. The Court's ruling is at page fifty-six, and its rationale can be found in the "Analysis" sections at pages sixteen, twenty-four, thirty-three, thirty-eight, forty-one, and fifty-one.

## I. PROCEDURAL HISTORY

On May 4, 2007, *Rekhter v. State of Washington, et al.* (*Rekhter*) was filed in Thurston County Superior Court, cause number 07-2-00895-8. Dkt. 1, Exhibit A. On June 20, 2007, the *Rekhter* case was removed to federal court. Dkt. 1. On May 8, 2007, *Pfaff v. Arnold-Williams*, (*Pfaff*) was filed in Thurston County Superior Court under cause number 07-2-00911-3. Dkt. 1, Exhibit A. On May 18, 2007, Ms. Pfaff filed a First Amended Complaint (Class Action). Dkt. 1, Exhibit B. On June 6, 2007, the *Pfaff* case was removed to federal court. Dkt. 1, Exhibit B.

A third case, *SEIU 775 v. Robin Arnold-Williams*, King County No. 07-2-17710-8SEA, was filed in King County Superior Court during May of 2007. On December 13, 2007, Judge Armstrong of the King County Superior Court stayed *SEIU 775* pending resolution of *Rekhter* and *Pfaff*. Dkt. 66.

On August 17, 2007, this court consolidated the *Pfaff* and *Rekhter* cases and ordered that future documents be filed in the *Pfaff* case. Dkt. 26, at 8.

On November 27, 2007, the court granted Plaintiff Pfaff's Motion for Certification of the Class of Medicaid Beneficiaries and Plaintiff Rekhter's Motion for Class Certification. Dkt. 57. The Order stated that the motions were granted insofar as the classes are certified only for purposes of determining whether defendants are liable to plaintiffs. Dkt. 57. Gregory A. McBroom and Kevin B. Hansen of Livengood Fitzgerald & Alskog were appointed as class counsel. Dkt. 57, at 12.

On December 14, 2007, the court granted the parties' stipulation to amend the class definition. Dkt. 65. The amended class definition is as follows:

> 1. All persons who (1) were determined eligible for Medicaid funded in-home personal care assistance and (2) had their base hours adjusted by fifteen percent because of the operation of Wash. Admin. Code § 388-106-130(b)(3) (or its predecessor), except to the extent that they (3) requested an adjudicative proceeding pursuant to Wash. Rev. Code § 74.08.080 challenging the downward adjustment and have received or will receive back benefits as a result.

2. All providers of Medicaid-funded in-home personal care employed by persons who (1) were determined eligible for Medicaid funded in-home personal care assistance and (2) had their base hours adjusted by fifteen percent because of the operation of Wash. Admin. Code § 388-106-130(b)(3) (or its predecessor), except to the extent that they (3) requested an adjudicative proceeding pursuant to Wash. Rev. Code § 74.08.080 challenging the downward adjustment and have received or will receive back benefits as a result.

Dkt. 65, at 2-3.

### SECOND AMENDED CLASS ACTION COMPLAINT

On October 6, 2008, Plaintiffs filed a Second Amended Class Action Complaint (Dkt. 165), which is the complaint now before the court. The second amended complaint named as defendants the State of Washington; the Department of Social and Health Services (DSHS); Robin Arnold-Williams, Secretary of DSHS, in her individual and official capacities; Dennis Braddock, former Secretary of DSHS, in his individual and official capacities; Kathy Leitch, Assistant Secretary for the Aging and Disability Services Administration, in her individual and official capacities; and Jane and John Doe Nos. 1 thru [sic] 100. Dkt. 165, at 1-2.

The second amended complaint alleges the following causes of action on behalf of Medicaid recipients and their care providers: (1) Medicaid Comparability Statute, 42 U.S.C. § 1396a(a)(10)(B), 42 C.F.R. § 440.240(b) and 42 C.F.R. § 440.230(b)(Comparability Claim); (2) Fifth Amendment constitutional taking, incorporated through the Fourteenth Amendment (federal constitutional takings claim); (3) Civil Rights Acts claims, pursuant to 42 U.S.C. § 1983 (§ 1983 claims); (4) Title II of the Americans with Disabilities Act, 42 U.S.C. Chapter 126 and 28 C.F.R. Part 35 (ADA claim); (5) Section 504 of the Rehabilitations Act of 1973, 29 U.S.C. § 1984 (RA claim); (6) Federal Impairment of Contracts, U.S. Constitution, Article I, § 10 (federal impairment of contracts claim); (7) breach of contract (state breach of contract claim); (8) Washington wage laws, chapter 49.52 RCW (Washington wage claim); (9) unjust enrichment; and (10) quantum meruit. Dkt. 165.

In their causes of action in the second amended complaint, Plaintiffs do not list a specific cause of action under the Medicaid Choice of Provider provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(23). However, in ¶ 1.13 of the second amended complaint, plaintiffs allege as follows:

"Further, Medicaid laws do not permit DSHS to restrict a Medicaid recipient's choice of a willing an qualified care provider in the manner prescribed by the Shared Living Rule." Dkt. 165, at 5. The second amended complaint also references the Medicaid Choice of Provider requirements in ¶ 2.26. Dkt. 165, at 12. Plaintiffs have arguably stated a claim that the Shared Living Rule violated the Medicaid Act Choice of Provider requirements. In addition, the parties addressed the Medicaid Choice of Provider issues in their briefing and documentation submitted in support of and in response to the pending motions. Accordingly, the Court assumes that Plaintiffs have also pled a claim in the second amended complaint that the Shared Living Rule violated the Medicaid Choice of Provider requirements (choice of provider claim).

MEDICAID FUNDED PROGRAMS AND SHARED LIVING RULE

This case involves claims on behalf of classes of recipients of personal care services and providers of personal care services through four public assistance programs administered by defendant Washington State Department of Social and Health Services (DSHS). The four programs are: (1) the Community Options Program Entry System (COPES) (42 U.S.C. § 1396(c)) and RCW 74.39A.030(2)); (2) the Medicaid Personal Care (MPC) program (42 U.S.C. § 1396d(a)(24) and RCW 74.l09.520(2)); (3) the Medically Needy In-Home Waiver program (42 U.S.C. § 1396n(c)), RCW 74.09.700(2)(a)(I) and RCW 74.39.041(1)); and (4) the Chore Program (RCW 74.39A.220). While each program is somewhat different, they all have both functional disability and financial eligibility standards that recipients must meet in order to be eligible for benefits. The first three programs are Medicaid programs for which the federal government reimburses slightly more than fifty percent of the state's expenditures. The Chore Program is entirely state funded.

Under these programs, DSHS pays for eligible recipients to receive assistance with activities of daily living such as bathing, dressing, eating, and toilet use. These services are designed to enable the recipients to reside in their homes instead of in institutional settings. Recipients who are developmentally disabled receive services through the DSHS Division of Developmental Disabilities, and other disabled adults receive services through the DSHS Division

1   of Aging.  The methodology of determining the level of personal assistance for which the recipient
2   is eligible is the same for all recipients.

3       The standard assessment process used by DSHS for determining both eligibility and the
4   number of hours of assistance that will be provided is known as the Comprehensive Assessment
5   and Reporting Evaluation (CARE) process.  The CARE process is set forth in WAC 388-106-
6   0080 through -0145.  Prior to June 29, 2007, pursuant to former WAC 388-106-130(3)(b),
7   recipients who chose to have providers who lived with them received fifteen percent fewer hours
8   of paid assistance than those recipients whose providers were not part of the recipients'
9   households.  This was known as the "Shared Living Rule."

10                              *JENKINS* CASE

11      In *Jenkins v. Washington State Dept. Of Social and Health Services*, 160 Wn.2d 287
12  (2007), the Washington Supreme Court resolved three different administrative appeals of DSHS
13  decisions determining the number of hours that individual recipients were eligible for under the
14  COPES and MPC programs.

15      The first two cases involved two recipients of Medicaid-funded home health care, Venetta
16  Gasper and Tommye Myers, who filed actions in Thurston County Superior Court, seeking
17  review of administrative decisions and a declaratory judgment invalidating the Shared Living Rule.
18  The two cases were consolidated.  The trial court invalidated the Shared Living Rule and reversed
19  the two administrative decisions, ruling that DSHS exceeded its statutory authority by violating
20  federal choice of provider protections and comparability requirements.  *See Gasper-Myers v.*
21  *DSHS*, 132 Wn. App. 42, 48-49 (2006).  On appeal, the Washington Court of Appeals, Division
22  2, held that the Shared Living Rule violated the Medicaid Comparability requirements but did not
23  violate the Medicaid Choice of Provider requirements.  *See id.*  DSHS filed a petition for review
24  with the Washington Supreme Court.

25      In the third case, David Jenkins, a recipient of Medicaid-funded home health care, filed
26  suit in King County Superior Court, appealing an adverse administrative decision.  *See Jenkins v.*
27  *Washington State Dept. Of Social and Health Services*, 160 Wn.2d at 294.  The state courts held
28

that the Shared Living Rule violated Medicaid Comparability requirements. The *Jenkins* case was
certified to the Washington Supreme Court for direct review; the Washington Supreme Court
consolidated *Jenkins* with *Gasper-Myers* and granted review. *Id*. at 294.

Appellant, DSHS, in *Jenkins* appealed the following claims to the Washington Supreme
Court: (1) violation of the federal Medicaid Comparability requirements under 42 U.S.C. § 1396;
(2) violation of the federal Medicaid free Choice of Provider guaranty under 42 U.S.C. § 1396;
(3) violation of Title II of the Americans with Disabilities Act of 1990 under 42 U.S.C. § 12132;
(4) violation of the privileges and immunities clause under article I, section 12 of the Washington
Constitution; (5) violation of the equal protection clause of the fourteenth amendment to the
United States Constitution; and (6) violation of the due process clause of the fourteenth
amendment to the United States Constitution. *Id*. at 290.

On May 3, 2007, the Washington Supreme Court, in a 6-3 decision, held that former
WAC 388-106-0130(b)(3) (the Shared Living Rule) violated the Medicaid Comparability
requirements of 42 U.S.C. § 1396a(a)(10)(B)(I). The majority in *Jenkins* held that (1) the Shared
Living Rule was invalid to the extent that it presumed that certain needs of the recipient are met
without an individualized determination, and that the presumption results in an automatic fifteen
percent reduction in the recipient's assessed number of allotted care hours based only on the fact
that the recipient lives with a caregiver; and (2) the COPES program was not exempt from the
federal comparability requirements. *Id*. at 300-301.

Three justices dissented from the majority in *Jenkins*, concluding that the Shared Living
Rule does not violate Medicaid Comparability requirements. The dissenting justices opined that
(1) the court should have deferred to the DSHS interpretation of the Medicaid Comparability
requirements and the adoption of the Shared Living Rule; (2) the Shared Living Rule was
developed as part of a "uniform system for assessing functional disability to support equitable
allocation of the State's all-too-limited resources across the pool of eligible recipients" (*Id*. at
310); (3) the Shared Living Rule operates as only one of the many irrebutable presumptions that
comprise the CARE tool; (4) the entire CARE process is based on presumptions and

1   approximations, regardless whether an individual does or does not live with his or her caregiver;

2   and (5) because the majority had not demonstrated a principled basis for distinguishing between

3   the Shared Living Rule and other CARE tool rules, and given the most minimal deference to

4   DSHS' expertise, the Shared Living Rule did not violate Medicaid Comparability requirements.

5   *Id.*

6         The Washington Supreme Court remanded the case "for determination, consistent with the

7   opinion, of the amount of personal care hours DSHS wrongfully withheld from the respondents

8   for their unmet need for assistance with housekeeping, shopping, meal preparation services, and

9   wood supply, retroactive to the date the shared living rule was applied to their cases." *Id.* at 302-

10  03.

11        DSHS repealed the Shared Living Rule on an emergency basis, effective June 29, 2007

12  (Dkt. 7-2), and on a permanent basis, effective February 22, 2008 (Wash. State Register No. 08-

13  03-111).

14        DSHS filed a motion for reconsideration in *Jenkins*, seeking clarification as to whether the

15  remand was to the superior courts that heard the administrative appeals or to DSHS pursuant to

16  RCW 34.05.574. Dkt. 77 at 4. On August 16, 2007, the Washington Supreme Court denied

17  DSHS' motion for reconsideration. Dkt. 77 at 4. Following remand, all issues in *Jenkins* were

18  resolved.

19                    <u>FIRST SET OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>

20        The first set of motions for partial summary judgment concerned only Plaintiffs' claims

21  that the Shared Living Rule violated Medicaid Comparability and Choice of Provider

22  requirements. Dkts. 77, 78. On May 29, 2008, the Court issued an Order on the parties' first set

23  of motions for partial summary judgment. Dkt. 141. The Court denied Class Plaintiff's Motion

24  for Summary Judgment (Dkt. 77), and granted Defendants' Motion for Summary Judgment re:

25  Medicaid Act Claims (Dkt. 78). All Plaintiffs' claims that the Shared Living Rule violated the

26  Medicaid Comparability requirements, 42 U.S.C. § 1396a(a)(10)(B)(I) and the Medicaid Choice

27  of Provider Requirements, 42 U.S.C. § 1396a(a)(23) were dismissed because they did not meet

28

the requirements for relief under 42 U.S.C. § 1983. The Court did not rule on the merits of whether the Shared Living Rule violated the Medicaid statutes.

PRESENT SET OF MOTIONS FOR SUMMARY JUDGMENT

The motions for partial summary judgment now before the Court were filed by the parties on October 9, 2008.

*Class Plaintiffs' Omnibus Motion for Partial Summary Judgment on Federal Claims.* In their partial motion for summary judgment, Class Plaintiffs contend (1) that the Court should apply the doctrine of collateral estoppel to the *Jenkins* case as to the issues of whether the Shared Living Rule violated Medicaid comparability and whether the care recipients should be awarded relief under the state public assistance recipient protection law RCW 74.08.080(3); (2) alternatively, that the Court should certify the collateral estoppel issue to the Washington State Supreme Court; (3) that the Court should find the Shared Living Rule violated Medicaid comparability requirements; (4) that the Court should find the Shared Living Rule violated Medicaid free choice of provider requirements; (5) that the Court should find the Shared Living Rule violated the Americans with Disabilities Act (42 U.S.C. § 12132) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794(a)); (6) that the Court should find the Shared Living Rule violated the Contracts Clause of the United States Constitution; (7) that the Court should find that the Shared Living Rule violated the Takings Clause of the United States Constitution; and (8) that the Court should find that the Shared Living Rule violated the Due Process and Equal Protection Clauses of the United States Constitution. Dkt. 168.

In their response to Plaintiffs' motion for partial summary judgment, Defendants assert that (1) the Washington Administrative Procedures Act (WAPA) (RCW 34.05), RCW 74.08.080(3), and *Jenkins* do not provide for the restitution remedy requested by Plaintiffs; (2) the Shared Living Rule did not violate either Medicaid comparability requirements or Medicaid choice of provider requirements; (3) the Shared Living Rule did not violate the ADA or the Rehabilitation Act; (4) Plaintiffs are not entitled to relief under the Takings Clause of the Fifth Amendment of the United States Constitution; (5) the Shared Living Rule did not result in an

1  unconstitutional impairment of contracts; and (6) Plaintiffs are not entitled to damages based on

2  due process or equal protection.  Dkt. 175.

3      In reply, Plaintiffs argue that (1) collateral estoppel should be applied, and the Department

4  misstates the facts of *Pub. Util. Dist. No. 1 v. Tombari Family Ltd. P'ship*, 117 Wn.2d 803

5  (1991); (2) the Department violated Medicaid comparability requirements and the case law

6  demonstrates the absurdity of the "payment levels" defense; (3) the Department misstates the

7  standard for an ADA claim involving facial discrimination that excludes certain beneficiaries from

8  program benefits; (4) the Department's arguments regarding the WAPA and RCW 74.08.080(3)

9  were directly rejected by the State Supreme Court in *Jenkins* and plaintiffs were not required to

10  exhaust administrative remedies because the Shared Living Rule could not be challenged

11  administratively; (5) RCW 74.08.080(3) provides a remedy for class recipients; however, the case

12  also meets all the elements for invoking a remedy under the implied rights of action doctrine; (6)

13  42 U.S.C. § 1396a(a)(3) and the Department's failure to offer a fair hearing for benefits denied

14  under the Shared Living Rule provides a basis for an implied right of action under the Medicaid

15  Act; and (7) qualified immunity is not appropriate because the Department failed to engage in

16  even a modicum of inquiry into the assumptions underlying the Shared Living Rule and the effect

17  on the vulnerable care recipients.  Dkt. 186.

18      *Defendants' Motion for Partial Summary Judgment Regarding Remaining Federal*

19  *Claims.*  In their motion for partial summary judgment, Defendants contend that (1) the Shared

20  Living Rule did not violate the Americans with Disabilities Act or Section 504 of the

21  Rehabilitation Act; (2) the Shared Living Rule did not violate the Equal Protection Clause or the

22  Due Process Clause of the United States Constitution; (3) the Shared Living Rule did not result in

23  a compensable taking; and (4) promulgation of the shared living rule did not violate the

24  Constitutional prohibition against impairment of contracts.

25      In their response to Defendants' motion for partial summary judgment, Plaintiffs maintain

26  that (1) the Department falsely infers that the Shared Living Rule did not affect the level of public

27  assistance services provided to care recipients; (2) the Department violated Title II of the ADA by

28

1  disparately allocating services and by failing to provide the services to the care recipients in the

2  least restrictive setting; (3) the Department violated Equal Protection and Due Process because its

3  actions were arbitrary and capricious, not rationally related to a legitimate public purpose, and

4  contrary to the express intentions of the State legislature; (4) the Department's contention that

5  public assistance benefits have no pecuniary value or that the class had an obligation to bring an

6  inverse condemnation claim lacks substance both on factual and legal grounds; and (5) the

7  Department violated the Impairment of Contracts Clause of the United States Constitution

8  because it substantially impaired contracts with the care providers in violation of the law.  Dkt.

9  176.

10  In their reply, Defendants argue that (1) there is no evidence that recipients suffered actual

11  harm; (2) the ADA and Section 504 of the Rehabilitation Act were not violated; (3) there was not

12  an equal protection or due process violation; (4) the Shared Living Rule did not result in a taking

13  of any property of recipients; (5) the Shared Living Rule did not result in a taking of any property

14  of care providers; (6) Plaintiffs cannot claim a Fifth Amendment takings violation; and (7) the

15  Shared Living Rule did not violate the Contracts Clause.  Dkt. 185.

16  ## II. DISCUSSION

17  ## A.  SUMMARY JUDGMENT STANDARD

18  Summary judgment is proper only if the pleadings, the discovery and disclosure materials

19  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

20  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

21  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

22  showing on an essential element of a claim in the case on which the nonmoving party has the

23  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

24  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

25  for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

26  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

27  metaphysical doubt").  *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

28

1   material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

2   a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

3   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630

4   (9th Cir. 1987).

5          The determination of the existence of a material fact is often a close question. The Court

6   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

7   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

8   *Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of

9   the nonmoving party only when the facts specifically attested by that party contradict facts

10  specifically attested by the moving party. The nonmoving party may not merely state that it will

11  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

12  to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

13  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be

14  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

15  **B.     MOTIONS TO STRIKE**

16         Defendants, in their reply in support of their motion for partial summary judgment

17  (Dkt. 185), request that the Court strike the declaration of Frank Fox (Dkt. 177), which the Class

18  Plaintiffs submitted with their response to Defendants' motion for summary judgment.  The Court

19  has reviewed the motion to strike, the pleadings filed in support of and in opposition to the

20  motion, and the remainder of the file herein.  The Court, finding no violation of discovery rules

21  associated with Class Plaintiffs' filing of the declaration of Frank Fox, should deny Defendants'

22  motion to strike (Dkt. 185).

23         Class Plaintiffs, in responding to Defendants' motion to strike, bring a cross motion to

24  strike a portion of the testimony of Bea-Alise Rector regarding the exception to administrative

25  rule process.  Class Plaintiffs argue that Ms. Rector made contradictory statements in her fifth

26  declaration and in her deposition, regarding obtaining an exception to the Shared Living Rule

27  through the administrative process.  Class Plaintiffs request that Ms. Rector's declaration be

28

stricken because of these contradictory statements. The Court should assess all testimony given by Ms. Rector, and give appropriate consideration to any inconsistent statements found therein. Class Plaintiffs' motion to strike the declaration testimony of Ms. Rector should be denied.

**C.      ADA (42 U.S.C. § 12132)/SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. § 794(a)) CLAIMS**

1. *Class Plaintiffs' Motion for Summary Judgment (Dkt. 168)*

Class Plaintiffs, in their motion for summary judgment, argue that the Shared Living Rule violated the ADA and Section 504 of the Rehabilitation Act. Class Plaintiffs assert that each of the care recipients is a qualified individual with a disability, that the care recipients were denied paid Medicaid benefits through the Shared Living Rule, and that the denial of benefits was by reason of the care recipients' disabilities. Class Plaintiffs argue that the ADA and Section 504 prohibit the Department from providing a particular service to some while denying that service to other disabled persons, and that under federal regulation, the Department may not impose eligibility criteria that screen out any class of individuals with disabilities from fully and equally enjoying any service, program, or activity.

Class Plaintiffs argue that the Department, by denying Medicaid benefits to the care recipients solely on the basis of the status of their care providers, imposed eligibility requirements that resulted in care recipients not receiving the same benefits provided to those with live-out care providers.

Additionally, Class Plaintiffs assert that the Shared Living Rule violated the ADA's "integration regulation," which requires public services to be administered in the most integrated setting appropriate to the needs of qualified individuals with disabilities. Finally, Class Plaintiffs argue that a "fundamental alteration" defense would not apply to the present case.

2. *Defendants' Motion for Summary Judgment (Dkt. 167)*

Defendants argue that the Shared Living Rule did not violate either the ADA or Section 504 of the Rehabilitation Act. Defendants point out Class Plaintiffs' admission that the alleged discrimination was on the sole basis of the live-in status of the care provider. Defendants argue that this admission alone warrants dismissal of Class Plaintiffs' ADA/Section 504 claims because

1    it demonstrates that the discrimination, if any, was not based solely on the disabilities of Class

2    Plaintiffs.  Defendants also assert that the Ninth Circuit has held that plaintiffs have no claim

3    under the ADA or the Rehabilitation Act against any defendant sued in his or her individual

4    capacity under 42 U.S.C. § 1983.

5          Defendants contend that both the ADA and Section 504 prohibit discrimination in the

6    form of exclusion from participation in or denial of benefits, services, programs, or activities of a

7    public entity.  Defendants further argue that such exclusion must be solely by reason of an

8    individual's disabilities.  Defendants argue that here, the Shared Living Rule was applied to care

9    recipients, not by reason of a disability, but because they chose a live-in provider.  Therefore,

10   Defendants assert that the Shared Living Rule did not discriminate based solely on the basis of

11   disability, but on basis of the care recipients' living arrangements with their chosen providers.

12         Defendants also deny that the Shared Living Rule violated the ADA' integration

13   requirements.  Defendants assert that none of the named recipient class representatives stopped

14   receiving the particular services that the Shared Living Rule affected, but rather, that all of the

15   Class Plaintiff providers testified that they continued to reside with their recipients, and that none

16   of them stopped providing services to the home that they both shared.  Defendants argue that the

17   Shared Living Rule did not force any recipient into a less integrated setting, and that had a

18   preferred live-in provider become unwilling to provide services at the rate offered, the recipient

19   could simply have chosen a live-out provider to provide the services, thus negating the necessity

20   of the recipient going into institutionalized care.

21         3. *Class Plaintiffs' Response (Dkt. 176)*

22         In their response, Class Plaintiffs assert three reasons why the Department's

23   implementation of the Shared Living Rule violated the ADA.  First, Class Plaintiffs contend that

24   the Department eliminated paid care services for care recipients with live-in providers while

25   providing paid care services to recipients with live-out providers, even though all the care

26   recipients had the same individualized need for the services based upon their disabling conditions.

27   Next, Class Plaintiffs argue that the Department's flat 15% cut to the care recipients' base hours

28

resulted in more disabled persons receiving a greater cut in paid care services than less disabled individuals received. Third, Class Plaintiffs contend that without the intervention of third party informal supports, the care recipients would have been forced into institutionalized care due to the elimination of essential life-sustaining services.

Class Plaintiffs argue that no showing of intentional discrimination or denial of benefits is necessary to make out a violation of the ADA. Class Plaintiffs contend that Defendants' argument, that the Shared Living Rule does not discriminate on the basis of disability but rather on the basis of the provider's living arrangement, ignores the Rule's discriminatory effect. Class Plaintiffs contend that Defendants are arguing that a regulation could not violate the ADA unless its express language evidenced discrimination on the basis of disability, and that such an argument would render the ADA meaningless.

Class Plaintiffs further contend that *Weinrich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 979 (9th Cir. 1997*)* is distinguishable from the present case, and that here, the Shared Living Rule created two classes of care recipients. Class Plaintiffs contend that the Shared Living Rule's 15% reduction necessarily resulted in greater cuts for the more disabled: that the greater the disability, the larger the cut in public assistance. Moreover, Class Plaintiffs argue that the Department's use of the word "choice" is misleading, because many of the care recipients require a live-in provider because of their disabling conditions.

Class Plaintiffs reassert their argument that the Shared Living Rule violated the ADA's integration requirements. Class Plaintiffs reject Defendants' assertion that "none of the named recipient class representatives stopped receiving the particular services that the shared living rule affected," (Dkt. 176, at 18) arguing that this contention ignores Bonnie Drewes' testimony that a care provider quit as a result of the impact of the Shared Living Rule. Class Plaintiffs further argue that each of the care recipients testified that they continued to provide the services to the care recipients to prevent them from being placed into higher institutionalized care, and that some care providers planned to quit if the benefit hours were not restored.

1    Finally, Class Plaintiffs maintain that the Department failed to provide paid benefits for

2    shopping, housekeeping and meal preparation services in a community-based setting for care

3    recipients with live-in care providers.  Class Plaintiffs argue that the location of services is an issue

4    in this case, and that *Townsend v. Quasim*, 328 F.3d 511 (9th Cir. 2003) and *Olmstead v. L.C.*,

5    527 U.S. 581 (1999), are controlling authority.

6         4. *Defendants' Response (Dkt. 175)*

7         In their response, Defendants reassert the arguments made in their motion for summary

8    judgment.  Defendants reassert that the discrimination here, if any, was not based solely on the

9    disabilities of the care recipients, but rather on the status of their care providers.  Defendants also

10   deny that the Shared Living Rule violated the ADA's integration requirements.

11        Additionally, Defendants argue that Plaintiffs' assertion that they are entitled to monetary

12   damages under the ADA and Section 504, or under RCW 74.08.080, should be rejected.

13   Defendants argue that in the Ninth Circuit, compensatory damages are not available under Title II

14   or § 504 absent a showing of discriminatory intent.  Defendants acknowledge that the Ninth

15   Circuit has not yet determined whether "discriminatory animus" or "deliberate indifference" is the

16   appropriate standard of proof, but argue that in either case, Class Plaintiffs have not met their

17   burden to show that the Shared Living Rule arose out of intentional discrimination against people

18   with disabilities.

19        Defendants also argue that plaintiffs must have suffered an "injury in fact" to recover

20   monetary damages under Title II or § 504, and that here Class Plaintiffs have failed to show any

21   injury in fact.  Defendants argue that Class Plaintiffs' own evidence shows that the named

22   recipients suffered no injury because they continued to receive the same level of care from their

23   providers despite the Shared Living Rule.

24        5. *Class Plaintiffs' Reply (Dkt. 186)*

25        In their reply, Class Plaintiffs argue that Defendants' reliance on *Ferguson v. City of*

26   *Phoenix*, 157 F.3d 668 (9th Cir. 1998), for the proposition that every ADA case requires a

27   showing of "deliberate indifference" or "discriminatory animus" is misplaced.  Class Plaintiffs

28

argue that the Ninth Circuit has held that in cases involving "facial discrimination" in the form of the wrongful exclusion of disabled persons from public services, a plaintiff need only demonstrate that the exclusion of services resulted in disparate treatment of individuals.  Class Plaintiffs argue that if this case goes to trial, the "facial discrimination" standard should be applied.  However, Plaintiffs also contend that even if the facial discrimination standard is not applied here, Class Plaintiffs would still satisfy either of the standards mentioned by Defendants, because the evidence demonstrates that the Department's actions were arbitrary and capricious and deliberately indifferent toward the needs of the care recipients.

### 6. *Defendants' Reply (Dkt. 185)*

Defendants, in their reply, reject Plaintiff recipients' claims that they were denied benefits allegedly available to other less-disabled individuals and that they require live-in providers because their disabling conditions are so severe.  Defendants assert that a great many recipients who have the highest level of acuity actually receive services from live-out providers.

Defendants also argue that the Class Plaintiffs' reliance on one hearsay declaration from a family member who claims that the provider quit, in part, because of the shared living rule, is insufficient to defeat Defendants' summary judgment motion or to support a ruling on liability in Class Plaintiffs' favor.

Finally, Defendants argue that there has been no unjustified isolation of the disabled here, and thus no violation of the ADA's integration rules.  Defendants assert that Class Plaintiff's reliance on *Townsend* is misplaced, and that Class Plaintiffs have failed to establish a prima facie case of "integration discrimination."

### 7. **ANALYSIS**

**Discrimination Claim under the ADA and Section 504**

To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefit of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

1     *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal

2 quotation marks omitted).

3     Similarly, to state a claim under Title II of the ADA, a plaintiff must allege:

4         (1) he is an individual with a disability; (2) he is otherwise qualified to
participate in or receive the benefits of some public entity's services, programs, or

5 activities; (3) he was either excluded from participation in or denied the benefits of
the public entity's services, programs, or activities, or was otherwise discriminated

6 against by the public entity; and (4) such exclusion, denial of benefits, or
discrimination was by reason of [his] disability.

7     *Id.*

8     Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act.

9 *Pierce v. County of Orange*, 526 F.3d 1190, 1217 n.27 (9th Cir. 2008).  Moreover, the Ninth

10 Circuit has held that "there is no significant difference in analysis of the rights and obligations

11 created by the ADA and the Rehabilitation Act."  *Id.*, citing *Zukle v. Regents of Univ. of*

12 *California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); see *Armstrong v. Wilson*, 121 F.3d 1019,

13 1023 (9th Cir. 1997) (noting that "Congress has directed that the ADA and RA be construed

14 consistently.").

15     Here, Defendants do not appear to contest the first two elements of Class Plaintiff's ADA

16 and Section 504 claims.  The recipient class is apparently composed of individuals with disabilities

17 who are otherwise qualified to receive DSHS benefits.  Some members of the recipient class may

18 have been denied benefits by DSHS.  Furthermore, DSHS receives federal funding, which satisfies

19 the fourth element under Section 504.

20     The primary dispute is whether the denial of benefits to Class Plaintiffs was by reason of

21 the individual plaintiffs' disabilities.  Class Plaintiffs contend that the denial of benefits is by reason

22 of the care recipients' disabilities, citing *Rodriguez v. City of New York*, 197 F.3d 611 (2nd Cir.

23 1999), for the proposition that the ADA and Rehabilitation Act prohibit a public entity from

24 providing a particular service to some while denying that service to other disabled persons.

25 However, *Rodriguez* is not binding upon this Court.

26     Defendants argue Class Plaintiffs' ADA and Rehabilitation Act claims should be dismissed

27 because Class Plaintiffs admit that the alleged discrimination was "on the sole basis of the live-in

28

1   status of the care provider," and that this admission warrants dismissal of the claims because it

2   "demonstrates the 'discrimination,' if any," was not based solely on disability.  Dkt. 167, at 12.

3   Defendants stress that Section 504 claims require that a denial of benefits be *solely* by reason of

4   an individual's disability, and note the Ninth Circuit's pronouncement that "there is no significant

5   difference in analysis of the rights and obligations created by the ADA and the Rehabilitation

6   Act."  *Pierce*, 526 F.3d at 1217 n.27.

7       Defendants' reasoning is correct.  Here, the Shared Living Rule was applied to Plaintiff

8   recipients, not by reason of their disability, but because of the living arrangement of their chosen

9   provider.  Furthermore, the Ninth Circuit has approvingly cited the Sixth Circuit's view that both

10  ADA and Section 504 claims require a denial of benefits and discrimination that occurs *solely by*

11  *reason of the plaintiff's disability. See Weinreich v. Los Angeles County Met. Transp. Authority*,

12  114 F.3d 976, 978 (9th Cir. 1997); *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996)

13  (quoting *Sandison v. Michigan High School Athletic Ass'n., Inc.*, 64 F.3d 1026, 1036-37 (6th

14  Cir. 1995).

15      At oral argument, Class Plaintiffs, citing to *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir.

16  1996), asserted that the Shared Living Rule disparately impacted individuals with more severe

17  disabilities.  However, there is no need to address this argument because Class Plaintiffs have not

18  met the threshold requirement of showing that the care recipients were denied benefits solely by

19  reason of their disabilities.  Because the denial of benefits to Class Plaintiffs was based on the

20  living arrangements of their providers, and not by reason of the recipients' disability, Class

21  Plaintiffs claims under the ADA and Section 504 should be dismissed.

22  **ADA "Integration Regulation" Claim**

23      Class Plaintiffs also allege that the Shared Living rule violated the ADA's "integration

24  regulation," which provides that "[a] public entity shall administer services, programs, and

25  activities in the most integrated setting appropriate to the needs of qualified individuals with

26  disabilities."  28 C.F.R. § 35.130(d).  Both parties cite to *Olmstead v. L.C. ex rel. Zimring*, 527

27  U.S. 581 (1999) in support of their respective arguments.  In *Olmstead*, the United States

28

1    Supreme Court interpreted the integration regulation of Title II of the ADA as prohibiting the

2    "unjustified institutionalization of persons with . . . disabilities." *Olmstead*, 527 U.S. at 597. The

3    *Olmstead* Court held that "unjustified isolation" constitutes discrimination under the ADA. *Id.*

4         Here, Class Plaintiffs have offered no evidence that the Shared Living Rule resulted in the

5    institutionalization of persons with disabilities. Even assuming that the Shared Living Rule

6    resulted in some care recipients being forced to chose live-out providers rather than live-in

7    providers, Class Plaintiffs have still failed to show that receiving care from a live-out provider

8    results in a less integrated setting than receiving care from a live-in provider.

9         Class Plaintiffs have failed to create an issue of fact that the Shared Living Rule placed

10    care recipients in isolation. Accordingly, Class Plaintiff's claim that the Shared Living Rule

11    violated the integration regulation of the ADA should be dismissed.

12    **D.       FIFTH AMENDMENT TAKINGS CLAIM**

13         1. *Class Plaintiffs' Motion for Summary Judgment (Dkt. 168)*

14         Class Plaintiffs argue that the Shared Living Rule should be found invalid because it

15    violated the Federal Takings Clause of the Fifth Amendment of the United States Constitution.

16    Class Plaintiffs assert that the Shared Living Rule appropriated property from the class members

17    without just compensation.

18         First, Class Plaintiffs assert that the care providers had a property interest in the contracts

19    in place between the providers and the Department. Additionally, Class Plaintiffs assert that the

20    care recipients had a property interest in the paid public assistance benefits that were eliminated by

21    the Shared Living Rule. Class Plaintiffs further assert that the Shared Living Rule appropriated

22    the care providers' contract rights and the care recipients' paid assistance benefits for public use

23    because the repudiation of payment of amounts due in order to reduce governmental burdens is a

24    public use. Therefore, Class Plaintiffs argue that constitutional takings under the Fifth

25    Amendment have occurred.

26         Class Plaintiffs assert three bases for relief for their Fifth Amendment claims: First, Class

27    Plaintiffs argue that the Takings Clause is self-executing, meaning that claims for compensation

28

1  are grounded in the Constitution itself and that no statutory remedy is required.  Alternatively,

2  Class Plaintiffs argue that relief should be granted under RCW 74.08.080(3).  Finally, Class

3  Plaintiffs argue that the Fifth Amendment violations give rise to a claim against Defendants in

4  their individual capacities under 42 U.S.C. § 1983.  Class Plaintiffs argue that the Defendants are

5  not entitled to qualified immunity for their conduct, and that it should be concluded that a cause

6  of action exists for care providers under 42 U.S.C. § 1983.

7      2.  *Defendants' Motion for Summary Judgment (Dkt. 167)*

8      In their motion for summary judgment, Defendants argue that the Shared Living Rule did

9  not result in a compensable taking.  First, Defendants assert that neither care recipients nor care

10  providers had a property interest that was taken as a result of the Shared Living Rule.  Defendants

11  contend that compensation is due under the Fifth Amendment only when the government effects a

12  taking of property in which an individual has a pecuniary interest.  Defendants assert that care

13  recipients do not have a pecuniary interest in long-term care services provided through

14  Department-administered programs, and that care providers have no pecuniary property interest

15  in payment for long-term care services.  Defendants argue that the care providers' legal rights to

16  compensation for providing long-term services to recipients, to the extent such rights exist, are

17  contractual rights, not pecuniary property rights.

18      Defendants further argue that even if care recipients had a property interest in long-term

19  care services, they have not and cannot establish that the Shared Living Rule deprived them or

20  that property interest.  Defendants assert that the Shared Living Rule did not result in a reduction

21  of the total long-term care services that the recipients received, but rather resulted in a reduced

22  amount of payment to the care providers.

23      Defendants also assert that the Shared Living Rule did not result in the taking of any

24  property from care providers.  Defendants maintain that the Department's contract with a

25  provider stated that the provider would deliver care to the recipient, and, in exchange the provider

26  would be paid at an amount authorized in the recipient's service plan, as determined by the

27

28

1    Department. Defendants contend that the Department paid all care providers as provided in their

2    contracts, and therefore, no taking of the providers' property occurred.

3         Additionally, Defendants argue that no Fifth Amendment violation occurred because no

4    recipient or provider either sought or was denied compensation from the state. Defendants argue

5    that if a state provides an adequate procedure for seeking just compensation, then a property

6    owner cannot claim a violation of the Just Compensation clause until the owner has used the

7    procedures and been denied just compensation. Defendants assert that Washington has an

8    adequate procedure for individuals seeking just compensation from the state for an alleged taking

9    of private property: an inverse condemnation action. Defendants argue that because no recipient

10   or provider to whom the Shared Living Rule was applied sought just compensation through an

11   inverse condemnation action, no recipient or provider has been *denied* just compensation.

12   Defendants argue that this shows that no violation of the Fifth Amendment occurred with respect

13   to the operation of the Shared Living Rule, and that therefore, Class Plaintiffs' Fifth Amendment

14   Takings claims should be dismissed.

15        3. *Class Plaintiffs' Response (Dkt. 176)*

16        In their response, Class Plaintiffs assert that Defendants' argument that long-term benefits

17   provided through Department-administered programs have no pecuniary value is contrary to the

18   law. Class Plaintiffs reassert their argument that courts have consistently held that payment

19   obligations under contract and statutory entitlements to public assistance benefits constitute

20   pecuniary property interests protected by the Fifth Amendment. Class Plaintiffs also distinguish

21   the present case from *Brown v. Legal Found. Of Wash.*, 538 U.S. 216 (2006) and *Hughes*

22   *Communications Galaxy, Inc.*, 271 F.3d 1060 (Fed. Cir. 2001), which Defendants relied upon in

23   their motion for summary judgment.

24        Class Plaintiffs also deny Defendants' argument that a pecuniary property interest is not

25   involved because the class cannot establish that the Shared Living Rule deprived the class of a

26   property interest. Class Plaintiffs assert that the long-term care services are determined by the

27   CARE tool, and that some long-term care services must be eliminated when the CARE tool

28

1 lowers the amount of benefits provided to the care recipients as was the case for the Shared

2 Living Rule.

3      Class Plaintiffs also use language from the care providers' contracts in making their

4 argument. Class Plaintiffs point to a contractual clause stating that for any inconsistency in the

5 contract, precedent shall be given to applicable state and federal statutes and regulations. Class

6 Plaintiffs also maintain that every provider testified that he or she assumed when signing the

7 contracts that the Department would follow state and federal laws governing public assistance

8 programs. Class Plaintiffs contend that a pecuniary property interest has been taken if the Court

9 determines the Department violated the law in the administration of the public assistance

10 programs.

11      Class Plaintiffs rebut Defendants' argument that an inverse condemnation action is a

12 prerequisite to seeking relief under the Takings Clause of the Fifth Amendment. Class Plaintiffs

13 point out that all of the inverse condemnation cases cited by Defendants involve "real property."

14 Class Plaintiffs cite to a United States Supreme Court case which defines "inverse condemnation"

15 as a description of the manner in which a landowner recovers just compensation for a taking of his

16 property. Class Plaintiffs assert that an inverse condemnation action would not be appropriate for

17 the issues presented in this case.

18      4. *Defendants' Response (Dkt. 175)*

19      In response to Class Plaintiffs' motion for summary judgment, Defendants reiterate their

20 argument that Class Plaintiffs are not entitled to relief under the Takings Clause of the Fifth

21 Amendment. Defendants reassert that neither recipients nor providers had a property interest, the

22 taking of which would give rise to compensation under the Fifth Amendment. Defendants argue

23 that care recipients do not have a pecuniary interest in public assistance benefits. Defendants

24 argue that while an individual may be considered to have a property interest in public assistance

25 benefits for purposes of application of due process principles, an individual does not have a

26 pecuniary property interest in public assistance for purposes of application of Fifth Amendment

27 takings principles.

28

1    Defendants also reassert their argument that no actual taking occurred.  Defendants

2    contend that there is no evidence that the Shared Living Rule resulted in any care recipient being

3    deprived of any shared-living-related services.  Defendants also maintain that Class Plaintiffs'

4    assertion that recipients "were forced to resort to third parties to get their needs met," Dkt. 168,

5    at 46, is not supported by citation to any evidence in the record.  Dkt. 175, at 26.

6    Defendants further contend that no care providers were deprived of any property interest.

7    Defendants contend that the providers' legal rights are contractual rights, and therefore, each

8    Plaintiff provider's remedy is to pursue a breach of contract claim against the Department, not a

9    Fifth Amendment takings claim.

10    Defendants also reassert their argument that even if Plaintiffs had a property interest that

11    was taken because of the Shared Living Rule, they cannot maintain a claim for just compensation

12    because they did not seek just compensation through state law procedures.

13    Defendants argue that Class Plaintiffs' reliance on *Lynch v. United States*, 292 U.S. 571

14    (1934) is misplaced and that *Lynch* is inapplicable to this case.  Defendants maintain that the

15    insurance contracts at issue in *Lynch* are distinguishable from the contracts in this case: the

16    contracts in *Lynch* were "war risk" insurance policies that the federal government issued to

17    soldiers and sailors serving in World War I, whereas the contracts in this case were ordinary

18    contracts for services.  Moreover, Defendants point out that while the contracts in *Lynch* were

19    abrogated, in the present case the contracts continued in full effect, with the Department

20    continuing to meet all of its obligations under their contracts.

21    5. *Defendants' Reply (Dkt. 185)*

22    In their reply, Defendants assert that Class Plaintiffs have failed to cite any case holding

23    that public assistance benefits are the type of property interest the taking of which gives rise to an

24    obligation to pay just compensation.  Defendants maintain that Class Plaintiffs have only cited to

25    cases holding that public assistance benefits may be considered property for purposes of

26    Fourteenth Amendment Due Process analysis.

27    Defendants also argue that the providers have no constitutional or statutory rights to

28

public assistance benefits, and that the only legal rights the providers possess are those arising from their contracts with the Department. Therefore, Defendants assert that the providers' proper remedy is a breach of contract claim, not a takings claim.

Defendants also reassert their argument that Class Plaintiffs cannot maintain a takings claim because they failed to seek compensation through state procedures. Defendants deny Class Plaintiffs' argument that inverse condemnation actions are only applicable when land has been taken. Defendants argue that nothing in the definition of "inverse condemnation" suggests that it applies only to the physical taking of real property, and Defendants cite to inverse condemnation cases not involving the taking of land.

6. **ANALYSIS**

The Federal Takings Clause, also commonly known as the Just Compensation Clause, of the Fifth Amendment of the United States Constitution forbids the taking of private property by the government without just compensation. Specifically, the Federal Takings Clause reads, "nor shall private property be taken for public use, without just compensation." U.S. CONST. AMEND. V. The Federal Takings Clause applies to the States as well as to the Federal government. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning*, 535 U.S. 302, 306 N.1 (2002).

The text of the Fifth Amendment imposes two conditions on the State's authority to confiscate private property: the taking must be for a "public use" and "just compensation" must be paid to the owner. *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 231-32 (2003). A threshold issue in conducting a Fifth Amendment analysis is determining the existence of a property interest. Because the Constitution protects rather than creates property interests, courts determine the existence of a property interest by reference to "existing rules or understandings that stem from an independent source such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998).

Provided that the existence of a property interest is established, and that the State takes the property for a public use, then the next issue is whether just compensation was paid to the

1  property owner.  The Fifth Amendment does not proscribe the taking of property; it proscribes

2  taking without just compensation.  *Brown*, 538 U.S. at 235.  Moreover, the "just compensation"

3  required by the Fifth Amendment is measured by the property owner's loss rather than the

4  government's gain.  *Id*. at 235-36.  Compensation is measured by the property owner's pecuniary

5  loss.  *Id*. at 237.  If the property owner's pecuniary loss is "zero, the compensation that is due is

6  also zero."  *Id*.  Accordingly, there is no Fifth Amendment violation if the value of the just

7  compensation is nil.  *Id*.

8  **TAKINGS CLAIM - RECIPIENTS**

9  Here, the first issue is whether the care recipients had a property interest in the paid public

10 assistance benefits that were eliminated by the Shared Living Rule.  The U.S. Supreme Court has

11 held that public assistance program benefits that provide services to the low income and needy

12 persons are property interests protected by the Fifth Amendment.  *See, e.g., Mathews v. Eldridge*,

13 424 U.S. 319, 332 (1976) (property interest in continued receipt of Social Security disability

14 benefits) ("[T]he interest of an individual in continued receipt of these benefits is a statutorily

15 created 'property' interest protected by the Fifth Amendment.");  *Goldberg v. Kelly*, 397 U.S. 254

16 (welfare benefits a matter of statutory entitlement for persons qualified to receive them).  The

17 long-term care services which the care recipients received through Department-administered

18 programs appear to be public assistance program benefits which constitute property interests

19 protected by the Fifth Amendment.

20 The next issue is whether the application of the Shared Living Rule resulted in a "taking"

21 of the care recipients' property interest.  The Class Plaintiffs assert that "[t]he care recipients who

22 were forced to resort to third parties to get their needs met were denied paid public assistance

23 benefits without compensation for the benefit of the public."  Dkt. 168, at 46.  In contrast,

24 Defendants argue that "[p]laintiffs' evidence shows that the recipient class received no fewer

25 services from their providers as a result of the shared living rule," that there is no evidence that

26 the Shared Living Rule resulted in a recipient entering into a more restrictive setting, and that

27 "speculative injury is not enough to justify damages for the recipient class."  Dkt.  185, at 2.

28

1    The Court's review of the evidence has uncovered no evidence of the needs of care

2  recipients going unmet as a result of the Shared Living Rule.  The Court has found no evidence

3  that the Shared Living Rule resulted in services being taken away from recipients.  In their motion

4  for summary judgment, Plaintiffs cite several declarations for the statement, "[s]ome care

5  recipients were also forced to find other ways to get their needs met or forced into higher

6  institutionalized care."  Dkt. 168, at 19, citing to Decls. Morris, Bayer, Eckhart, Crewdson, First

7  and Second Decls. Zimmerman; First and Third Decls. Alberts.  The Court has reviewed all of the

8  cited declarations, and has found no admissible evidence supporting Plaintiffs' proposition that the

9  needs of recipients went unmet or that some recipients were forced into institutionalized care.

10

11    At oral argument, Class Plaintiffs asserted that the benefit that the care recipients received

12  was the number of service hours for which recipients were to receive payment (paid service

13  hours). Class Plaintiffs argue that Defendants, by reducing the amount of paid service hours,

14  reduced the benefits to care recipients, and therefore violated the Takings Clause of the Fifth

15  Amendment.  For purposes of the present analysis, it does not matter whether Class Plaintiffs

16  characterize the alleged taking as a reduction of "paid service hours," "paid public assistance

17  benefits," (Dkt. 168, at 33), "long-term care services" (Dkt. 168, at 33), "public assistance

18  services" (Dkt. 176, at 4), or "benefits" (Dkt. 176, at 29).  What does matter is that Class

19  Plaintiffs have provided no evidence showing that the needs of care recipients went unmet, or that

20  services were taken away from care recipients, as a result of the Shared Living Rule.  The state

21  programs at issue were intended to provide disabled individuals with services, not hours.  Even if

22  the Shared Living Rule reduced the amount of paid hours, Class Plaintiffs have not shown that the

23  Shared Living Rule reduced the amount of services received.

24    Having found no evidence that the Shared Living Rule resulted in any taking of benefits

25  from care recipients, the Court cannot conclude that a taking occurred.  Absent a taking, a

26  Takings Claim under the Fifth Amendment can not proceed.  Accordingly,  Plaintiffs' Fifth

27  Amendment Takings Claim, on behalf of the recipient class, should be dismissed.

28

**TAKINGS CLAIM - PROVIDERS**

Again, in determining whether the care providers suffered a constitutional taking under the Fifth Amendment, the Court must determine the existence of a property right. Here, Plaintiffs cite *Lynch v. United States*, 292 U.S. 571 (1934) for the proposition that "payment obligations under a contract constitute a property interest." Dkt. 168, at 43.

Defendants respond by arguing the *Lynch* is inapplicable to this case. Defendants distinguish the present case from *Lynch* by noting that in *Lynch*, the Supreme Court concluded that where Congress completely *abrogated* certain "war risk" insurance contracts the federal government has issued, totally depriving policy holders of any benefit whatsoever under the insurance contracts, the policy holders or beneficiaries could maintain a claim for just compensation under the Fifth Amendment. Defendants argue that whereas *Lynch* dealt with "war risk" insurance contracts that the government issued to soldiers and sailors serving in World War I, the contracts in the present case are ordinary contracts for services. Defendants maintain that unlike in *Lynch*, the contracts in this case were not abrogated, but continued in full effect, with the Department continuing to meet all of its obligations under the contracts.

The contracts at issue in the present case are not analogous to the contracts in *Lynch*. Here, there was not a defined amount of money due and owing to the care providers that went unpaid. There was no property interest that had accrued, for which the providers failed to receive compensation.

Even assuming that the care providers had a property interest in the continuing payment obligations under the contracts in question, Plaintiffs must still show that a taking occurred. Here, Plaintiffs contend that the Shared Living Rule "appropriated the care providers' contract rights." Dkt. 168, at 45. The contract rights to which Plaintiffs refer are not entirely clear. Presumably, Plaintiffs are arguing that the Department's alleged repudiation of its contractual payment obligations constitutes a taking.

The Court has examined the contracts in question to determine the Department's payment obligations. The contracts in question provided, "DSHS shall pay to the Contractor a sum not to

1  exceed the rate or rates specified in the Statement of Work, Exhibit A.  The monthly service

2  payment for each eligible client for all services provided to the client under the Contractor's

3  Statement of Work during that month shall not exceed the amount authorized on the client's

4  services authorization." Dkt. 116, at 51.  An objective reading of the contracts reveals that the

5  Department's payment obligations were apparently left open, and that the Department had

6  discretion in setting the providers' level of payment.

7        The terms of the contracts in question appear to allow the Department to lower the levels

8  of payment to care providers.  Therefore, such a lowering of payment would not constitute an

9  abrogation of the contract, but rather, an alteration.  Such an alteration appears consistent with

10 the Department's rights under the contract, and does not appear to take any contractual rights

11 away from the providers.  The providers are not entitled to any fixed amount of payment under

12 the contracts, and the Department is not obligated to any level of payment that the Department

13 does not authorize.  Therefore, the Shared Living Rule appears not to have taken any contractual

14 rights away from the care providers.  The absence of a taking of the care providers' purported

15 property interest is fatal to Plaintiffs' Fifth Amendment claim.  Accordingly, Plaintiffs' Fifth

16 Amendment takings claim, on behalf of the provider class, should be dismissed.

17 **E.    CONTRACTS CLAUSE CLAIM**

18        1. *Class Plaintiffs' Motion for Summary Judgment (Dkt. 168)*

19        Class Plaintiffs allege that the Department violated the Contracts Clause of the United

20 States Constitution.  Also, in their second amended complaint, Class Plaintiffs allege that the

21 Shared Living Rule violated the agreements between DSHS and the Centers for Medicare and

22 Medicaid Services ("CMS") for which the care recipients are third-party beneficiaries.  Class

23 Plaintiffs seek summary judgment on the issue of whether the Shared Living Rule violated the

24 Contracts Clause of the United State Constitution by substantially impairing the contracts

25 between the Department and the care providers.

26        Class Plaintiffs argue that DSHS violated the Contracts Clause through the Shared Living

27 Rule because: (1) the Shared Living Rule eliminated payment to live-in care providers for

28

shopping, meal preparation, and housekeeping services; (2) the Shared Living Rule did not serve the Department's stated purpose of "making a need based allocation of its shared resources," and (3) other alternative means could have been employed to ensure that the Shared Living Rule did not overshoot its purpose. Dkt. 168, at 48.

Class Plaintiffs argue that the Shared Living Rule imposed new conditions and lessened the value of the care providers' contracts by forcing the providers to perform the same services as before while not compensating them for shopping, meal preparation, and housekeeping services. Class Plaintiffs allege that the care providers had no choice but to continue to provide those services because failure to do so was grounds for immediate breach of the contract which would expose the providers to damages. Class Plaintiffs contend that the financial reduction of payments for care services under the contract substantially impaired the contract. Dkt. 168, at 49.

Additionally, Class Plaintiffs argue that the Department had no legitimate purpose for requiring live-in care providers to perform services without compensation. Class Plaintiffs argue that a limited amount of financial resources did not justify the Department's unilateral demand that the care providers perform services without compensation. Dkt. 168, at 50.

Finally, Class Plaintiffs argue that the means that the Department employed to achieve its stated purpose were unreasonable and unnecessary. Class Plaintiffs contend that alternatives to the Shared Living Rule were available, and that the disparate impact of the Shared Living Rule could have been avoided if the Department had implemented some type of appeal procedure for recipients or permitted individualized assessments.

2. *Defendants' Motion for Summary Judgment (Dkt. 167)*

Defendants deny that the promulgation of the Shared Living Rule violated the constitutional prohibition against the impairment of contracts. Defendants seek summary judgment on Class Plaintiffs' claims that: (1) the Shared Living Rule substantially impaired the contracts between the Department and the care providers; and (2) the Shared Living Rule violated the agreements between the Department and CMS.

1    Defendants concede that contractual relationships existed between DSHS and care

2 providers. Dkt. 167, at 31. However, Defendants argue that the Shared Living Rule did not

3 affect the contract terms nor the providers' benefits and obligations. Defendants assert that each

4 contract between a care provider and DSHS provided that the provider would provide care to the

5 recipient, as specified in the recipient's service plan, in exchange for DSHS paying the provider an

6 amount authorized in the recipient's service plan.

7    Defendants point to the specific terms of the contract in making this argument.

8 Defendants point to contractual terms providing that "[t]he [care provider] agrees to assist, as

9 specified by the client, with those personal care services, authorized household tasks, and/or nurse

10 delegated or self-directed health care tasks which are included in the client's Service Plan." The

11 contracts further provided that "[t]he monthly payment for all services provided to any client will

12 not exceed the amount authorized in the client's Service Plan." Dkt. 167, at 31-32, citing to Dkt.

13 78-2 Exs. F, K, and M.

14    Defendants elaborate by arguing that after the promulgation of the Shared Living Rule,

15 every care provider continued to be paid by DSHS at the amount authorized in his or her client's

16 service plan. Defendants assert that there is no evidence that any care provider was not paid at

17 the contractually agreed amount, and that the Shared Living Rule did not affect care providers'

18 opportunity to seek remedies for breach of contract, had any breach occurred (which Defendants

19 deny). Defendants contend that Plaintiffs cannot point to a contractual right or obligation that

20 was affected, let alone substantially impaired, by the Shared Living Rule. Dkt. 167, at 32.

21    Additionally, Defendants argue that the Shared Living Rule was necessary to fulfill the

22 important public purpose of maximizing limited public assistance funding to eligible individuals.

23 Although Defendants do not concede that the Shared Living Rule substantially impaired the

24 contracts between DSHS and the care providers, Defendants argue that if any such impairment

25 occurred, it would be reasonable and necessary to fulfill an important public purpose.

26    Defendants also assert that even if promulgation of the Shared Living Rule violated the

27 Contracts Clause, the violation would only be as to those contracts entered into prior to the

28

promulgation of the rule.  Defendants argue that a Contracts Clause violation can only occur when there has been a change in state law that substantially impairs an existing contractual relationship.  Defendants contend that those contracts entered into after the promulgation of the Shared Living Rule (i.e. after the law had been changed) could not form the basis of a Contracts Clause claim, because Contracts Clause violations can only arise following a change in state law.

Finally, Defendants argue that the promulgation of the Shared Living Rule did not impair the contracts between DSHS and CMS in violation of the Contracts Clause.  Defendants explain that DSHS administers the Medicaid program in Washington under an agreement with CMS (the "State Plan"), and that additionally, DSHS administers certain home- and community-based long-term care programs through "waivers" issued by CMS.  Defendants characterize these "waivers" as "agreements" between DSHS and CMS, but question whether these waivers constitute contracts.  Defendants further question whether care recipient Plaintiffs are third-party beneficiaries to DSHS's arrangements with CMS.

Defendants assert that Class Plaintiffs cannot point to any provision in the State Plan that was affected by the Shared Living Rule.  Defendants further argue that Class Plaintiffs cannot point to any benefit or obligation under the State Plan that was affected by the Shared Living Rule.  Finally, Defendants argue the Shared Living Rule did not affect CMS's ability to seek a remedy for any alleged breach of the State Plan by DSHS, had any breach occurred (which Defendants deny).

3. *Class Plaintiffs' Response (Dkt. 176)*

In their response to Defendants' motion for summary judgment, Class Plaintiffs allege that Defendants' contention that the Shared Living Rule did not impair the contract with the care providers is without merit.  First, Class Plaintiffs assert that the before-and-after facts demonstrate that the Shared Living Rule impaired the amount of public assistance benefits received by the care recipients and the corresponding payment for those services to the care providers.  In essence, Class Plaintiffs argue that the fact that care providers receive more payment following the repeal of the Shared Living Rule demonstrates that the Contracts Clause was violated.

1    In response to Defendants' argument that no specific contractual terms were violated,

2    Class Plaintiffs assert that the phrase "amount authorized" cannot be construed as providing

3    DSHS with unfettered discretion to set the payment rates as it say fit regardless of whether its

4    actions complied with state or federal law.  Class Plaintiffs further argue that the parties intended

5    that the "authorized hours" be determined by the CARE tool.

6            Class Plaintiffs further argue that DSHS was required to follow state and federal laws that

7    governed eligibility under the CARE tool.  Class Plaintiffs assert that the contracts support the

8    intent of the parties to follow state and federal laws governing the public assistance programs, and

9    that if there was an inconsistency, then state and federal laws would control.  Class Plaintiffs

10   allege that DSHS's promulgation of the Shared Living Rule resulted in the violation of federal

11   law, which therefore substantially impaired the provider contracts.

12           Class Plaintiffs also denied DSHS' claim that the remedy for a violation of the Contracts

13   Clause would be limited to those contracts entered into prior to the promulgation of the Shared

14   Living Rule.  Class Plaintiffs argue that the facts of the present case are distinguishable from the

15   facts of the case that Defendants rely upon, and that because the Shared Living Rule violated

16   federal law, the remedy should apply at least through the date of its repeal.

17           Finally, Class Plaintiffs argue that Defendants' suggestion that the Court dismiss the

18   Contracts claim because "the promulgation of the Shared Living Rule did not in any way affect

19   care providers' rights to seek remedies for breach of contract" lacks merit.  Defendants

20   distinguished the facts of the present case from the facts of *Univ. of Hawaii Prof'l Assembly v.*

21   *Cayetano*, 183 F.3d 1096 (9th Cir. 1999), a case Defendants' relied upon, and argued that the

22   Contracts Clause claim is ripe for review because DSHS is using the Shared Living Rule as a

23   complete defense to a breach of contract claim.

24           4.  *Defendants' Response (Dkt. 175)*

25           In their response to Class Plaintiffs' motion for summary judgment, Defendants argue that

26   the contracts between DSHS and the care providers were not substantially impaired because no

27   contractual terms or conditions changed as a result of the promulgation of the Shared Living

28

ORDER - 32

1  Rule.  Defendants further argue that even if the contracts were impaired, such impairment was

2  necessitated by the legitimate public purpose of maximizing limited public assistance funding to

3  eligible individuals by fairly distributing public assistance based on need.

4      Defendants also assert that the Shared Living Rule was a reasonable and appropriate

5  means of achieving the public purpose of maximizing limited public assistance funding.

6  Defendants emphasize that the Shared Living Rule was calibrated to take only a 15 percent

7  reduction, even though DSHS's time study showed that the percentage of time devoted by

8  providers who resided in the same household as their recipients ranged from 33 percent to 42

9  percent.  Defendants argue that this "deferential drawing" of the Shared Living Rule's

10 presumption demonstrates its reasonableness.  Dkt. 175, at 34.  Defendants also assert that this

11 decision to automatically reduce payment to care providers by 15 percent was rational and

12 necessary because the difficulties in determining the precise percentage of shared living tasks in

13 every case outweighed the benefit of such precision.

14     5.  **ANALYSIS**

15     The Contracts Clause of the United States Constitution provides "No state shall . . . pass

16 any . . . law impairing the obligation of contracts."  U.S. CONST. art. I, § 10.  The Contracts

17 Clause limits the power of the States to modify their own contracts as well as to regulate those

18 between private parties.  *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 17 (1977).

19     In conducting a Contracts Clause analysis, Courts consider the following three inquiries:

20 (1) whether the state law has operated as a substantial impairment of a contractual relationship;

21 (2) whether the state has a significant and legitimate public purpose for the law; and (3) whether

22 the adjustment of the rights and responsibilities of contracting parties is based upon reasonable

23 conditions and is of a character appropriate to the public purpose justifying the legislation's

24 adoption."  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).

25         a)  *DSHS/Provider Contracts*

26     The first step in the Contracts Clause analysis is determining whether the law in question

27 operated as a substantial impairment of a contractual relationship.  An impairment of a public

28

1  contract is "substantial" if it deprives a private party of an important right, thwarts the

2  performance of an essential term, defeats the expectations of the of the parties, or alters a financial

3  term. *S. Cal. Gas Co.*, 336 F.3d at 890.

4        Here, Defendants argue that there was no impairment of the contracts in place between

5  DSHS and the care providers because the Shared Living Rule did not affect the contractual terms

6  in any way.  Notably, the contracts in place contained no specified payment amounts.  Rather, the

7  contracts provided, "DSHS shall pay to the Contractor a sum not to exceed the rate or rates

8  specified in the Statement of Work, Exhibit A.  The monthly service payment for each eligible

9  client for all services provided to the client under the Contractor's Statement of Work during that

10 month shall not exceed the amount authorized on the client's services authorization."  Dkt. 116,

11 at 51.

12       It is not apparent how the promulgation of the Shared Living Rule affected the terms of

13 the contracts.  The Court has reviewed the contracts in question, and cannot find any terms

14 affected by the Rule.  Defendants argue that it cannot have been "the intention of the parties that

15 the phrase 'amount authorized' in the contracts meant that the Department [DSHS] had

16 unfettered discretion to set the payment rates as it saw fit . . . ."  Dkt. 176, at 38.  However, the

17 objective terms of the contracts do appear to in fact grant DSHS wide discretion in setting

18 payment rates.

19       Class Plaintiffs argue that they had no choice but to continue to provide services after the

20 promulgation of the Shared Living Rule.  Class Plaintiffs assert that, "the care providers had no

21 choice but to continue to provide those extensive and essential services because failure to do so

22 was grounds for immediate termination of the contract and exposed the providers to damages."

23 Dkt. 168, at 49.  In support of this argument, Class Plaintiffs cite to a contract term stating,

24 "Failure of the Contractor to perform services in a manner to ensure the health and safety of the

25 client may result in immediate termination of the contract. . . . In such event the Contractor shall

26 be liable for damages as authorized by law." Dkt. 168, at 49, citing to Second Decl. McBroom,

27 Ex. K at 2 (Dkt. 116, at 52).

28

However, this contractual provision does not mean that care providers could not terminate the contract after the promulgation of the Shared Living Rule; rather, it merely means that providers agreed not to quit performing services in such a manner as would jeopardize the health and safety of the client. If the contractor was dissatisfied with the contract, he or she could simply quit after providing notice. Section 3 of the providers' Statement of Work provided, "The Contractor shall: . . . (c) Provide two weeks advance notice . . . prior to terminating personal care services." Dkt. 116, at 54.

Despite Class Plaintiffs' arguments to the contrary, the contracts entered into between DSHS and the care providers were unremarkable. The care providers agreed to provide services in exchange for payment. The level of payment was not specified, and the contracts granted DSHS the authority to set the level of payment. The Shared Living Rule did nothing to alter or impair the terms of the contracts. If the providers were dissatisfied with the reduction in their pay, they were free to quit and seek other employment after providing DSHS with two weeks notice.

The Shared Living Rule did not deprive Class Plaintiffs of an important right, thwart any essential terms of the contracts, defeat the objective expectations of the parties, or alter any financial terms of the contracts. Therefore, the promulgation of the Shared Living Rule cannot be said to have substantially impaired the contracts between DSHS and the care providers. Accordingly, Class Plaintiffs' Contracts Clause claim should be dismissed.

b) *DSHS/CMS Contracts*

Defendants also seek summary judgment on Class Plaintiffs' claim that the Shared Living Rule violated the Contracts Clause by impairing contracts between DSHS and CMS. In their response, Class Plaintiffs failed to respond to Defendants' request for summary judgment on this issue.

Local Rule CR 7(b)(2) provides, "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Here, Class Plaintiffs have failed to oppose Defendants' motion for summary judgment on the issue of

1  whether the Shared Living Rule impaired any contracts between DSHS and CMS. The Court has

2  found no evidence in the record establishing Class Plaintiffs' claim that the Shared Living Rule

3  violated the Contracts Clause by impairing contracts entered into by DSHS and CMS. Therefore,

4  Defendants' motion for summary judgment should be granted in this regard.

5  **F.    MEDICAID COMPARABILITY**

6        In their previous motion for partial summary judgment (Dkt. 77), Class Plaintiffs sought

7  monetary damages for the provider class under 42 U.S.C. § 1983 for violation of the Medicaid

8  comparability requirements. The Medicaid comparability requirements, 42 U.S.C. §

9  1396a(a)(10)(B)(I), provide that a State plan for medical assistance must provide

10       (B) that the medical assistance made available to any individual described in subparagraph
         (A)--

11

12            (I) shall not be less in amount, duration, or scope than the medical assistance made
              available to any other such individual[.]

13  On April 29, 2008, the Court held that the Defendants were entitled to qualified immunity, and

14  dismissed Class Plaintiffs' claims for damages under 42 U.S.C. § 1983 for violation of the

15  Medicaid comparability requirements. Dkt. 141.

16       1. *Class Plaintiffs' Motion for Summary Judgment (Dkt. 168)*

17       In their present motion for summary judgment, Class Plaintiffs again contend that the

18  Shared Living Rule should be held invalid for violating Medicaid comparability laws. Class

19  Plaintiffs argue that the Shared Living Rule violated the Medicaid comparability laws because it

20  was not applied with an "evenhanded sharing of benefits and burdens among those having the

21  same needs." Dkt. 168, at 26, citing *White v. Beal*, 555 F.2d 1146, 1151 (3rd Cir. 1977). In

22  essence, Class Plaintiffs argue that once DSHS decided to pay for medical assistance with

23  shopping, housekeeping, and meal preparation services to some care recipients (those with live-

24  out providers), DSHS was required to provide the same level of paid medical assistance to all

25  other care recipients (those with live-in providers). Class Plaintiffs cite to cases from various U.S.

26  District Courts, and the Second, Third, Fifth, and Sixth Circuits in making their argument.

27

28

Class Plaintiffs also argued that the Shared Living Rule violated Medicaid comparability laws by providing a greater cut to care recipients with greater disabilities in comparison to those with less severe disabilities. For these alleged violations of the Medicaid comparability laws, Class Plaintiffs seek relief pursuant to RCW 74.08.080(3), or, in the alternative, under the Implied Right of Action doctrine.

2. *Defendants' Response (Dkt. 175)*

Defendants responded to Class Plaintiffs' motion by arguing that the Shared Living Rule was consistent with Medicaid comparability requirements. Defendants argued that the *Jenkins* court's holding that the Shared Living Rule violated the comparability rule was in error for two reasons: (1) all of the recipients of in-home personal care assistance received the services called for in their plan of care, and reducing the level of payment to providers did not result in different recipients receiving different levels of services; and (2) under the CARE system, all similarly situated recipients had the same amount, duration, and scope of services available to them, the only difference was that their providers were paid less because they also benefitted from the shared living services.

Defendants further argued that the Medicaid comparability statue does not provide a freestanding implied right of action under which Class Plaintiffs can recover damages. Defendants argue that the fair hearing remedy found in 42 U.S.C. § 1396(a)(3) is insufficient to show that Congress intended to create a private cause of action for monetary damages. Defendants also argued that collateral estoppel does not apply in this case, because Washington courts do not apply nonmutual offensive collateral estoppel against the state in civil cases.

3. *Class Plaintiffs' Reply (Dkt. 186)*

In their reply, Class Plaintiffs' contend that the Defendants' argument that it was adjusting "payment levels" and not "benefits levels" is "absurd and was soundly rejected in *Jenkins*." Dkt. 186, at 6. Class Plaintiffs discuss *White v. Beal*, 555 F.2d 1146, 1150 (3rd Cir. 1977) at length to in making their argument. Class Plaintiffs also reiterated their argument that collateral estoppel should apply in this case, and argued that *Pub. Util. Dist. No. 1 v. Tombari Family Ltd. P'ship*,

1  117 Wn.2d 803, 819 P.2d 369 (1991) is an example where a Washington court "unequivocally

2  applied non-mutual collateral estoppel against the State." Dkt. 186, at 6.

3      4. **ANALYSIS**

4      In their motion for summary judgment on the issue whether the Shared Living Rule

5  violated Medicaid comparability laws, Class Plaintiffs seek relief pursuant to RCW 74.08.080(3),

6  or, in the alternative, under the Implied Right of Action doctrine. Defendants challenge Class

7  Plaintiffs' assertion that the Medicaid comparability statute provides a freestanding implied right

8  of action under which Class Plaintiffs can recover damages. Dkt. 175, at 11.

9      In determining whether a statute creates a private right of action, Courts consider: (1)

10  whether the plaintiff is a member of a class that the statute especially intended to benefit, (2)

11  whether the legislature explicitly or implicitly intended to create a private cause of action, (3)

12  whether the general purpose of the statutory scheme would be served by creation of a private

13  right of action, and (4) whether the cause of action is traditionally relegated to state law such that

14  implication of a federal remedy would be inappropriate. *Orkin v. Taylor*, 487 F.3d 734, 738 (9th

15  Cir. 2007) (*citing Cort v. Ash*, 422 U.S. 66 (1975)). The most important inquiry is the second

16  factor: whether there is "any indication of legislative intent, explicit or implicit, either to create

17  such a remedy or to deny one." *Orkin*, 487 F.3d at 738 (*citing Opera Plaza Residential Parcel

18  Homeowners Assn. v. Hoang*, 376 F.3d 831, 834-35 (9th Cir. 2004).

19      Here, it appears that the care recipient class is comprised of plaintiffs who are members of

20  a class that the Medicaid comparability statute is intended to benefit. The next, most important

21  inquiry is whether the legislature explicitly or implicitly intended to create a private cause of

22  action.

23      Defendants argue that while the language of the Medicaid comparability statute requires

24  every state plan to provide for a fair hearing where a claim for medical assistance is denied, the

25  statutory language makes no mention of monetary damages. Class Plaintiffs respond by asserting

26  that "Congress must have intended some remedy for the denial of benefits in the fair hearing

27  process." Dkt. 186, at 14. Class Plaintiffs also cite to *Watson v. Weeks*, 436 F.3d 1152 (9th Cir.

28

1    2006) for the proposition that federal courts have found a private right to sue for enforcement of

2    Medicaid comparability.

3         *Watson* does recognize that the Medicaid comparability statute creates a right enforceable

4    through a private cause of action. However, the private cause of action that *Watson* recognized

5    was under 42 U.S.C. § 1983. This Court has previously rejected Class Plaintiffs' 42 U.S.C. §

6    1983 claim for violation of the Medicaid comparability statute, holding that Defendants were

7    entitled to qualified immunity. *Watson* is silent on whether the Medicaid comparability statute

8    provides a freestanding implied right of action.

9         Class Plaintiffs have provided no evidence of any indication of legislative intent, either

10   explicit or implicit, to create a private federal cause of action for monetary damages for violation

11   of the Medicaid comparability statute. Class Plaintiffs cannot meet the elements required to

12   establish an implied right of action under *Orkin* without establishing that the legislature intended

13   to create an private cause of action. Here, Class Plaintiffs have failed to show such a legislative

14   intent. Therefore, Class Plaintiffs' claim for monetary damages for violation of the Medicaid

15   comparability statute, premised upon the implied right of action doctrine, should be dismissed.

16        Class Plaintiffs also seek relief pursuant to RCW 74.08.080(3). In the order (Dkt. 141)

17   regarding the parties' first set of motions for summary judgment, the Court stated that

18   "dispositive motions regarding the federal claims should be presented and decided before

19   dispositive motions are raised on the state claims." Dkt. 141, at 16. The Court intended for the

20   parties to limit their present set of motions for summary judgment to federal claims and remedies.

21   The Court will not consider, nor decide, matters of state law in the present order.

22   **G.    FREE CHOICE OF PROVIDER CLAIM**

23        1. *Class Plaintiffs' Motion for Summary Judgment (Dkt. 168)*

24        Class Plaintiffs also assert that the Shared Living Rule violates the following state and

25   federal free choice of provider laws: RCW 74.39A.270(4); 42 U.S.C. § 1396a(a)(23); and 42

26   C.F.R. § 431.51(a)(1). In making this argument, Class Plaintiffs incorporate by reference the

27   pleadings and associated declarations filed in support of their previous motion for summary

28

1  judgment.  In essence, Class Plaintiffs argue that the Shared Living Rule violated free choice of

2  provider laws because some care recipients were forced to choose live-out providers in order to

3  get their medical needs met.

4        2. *Defendants' Response (Dkt. 175)*

5        In their response, Defendants argue that the Shared Living Rule did not violate Medicaid's

6  choice of provider rule.  Defendants argue that Class Plaintiffs' claim fails because: (1) there is no

7  evidence that any of the recipients were unable to employ the provider of his or her choice; and

8  (2) the choice of provider requirement is not violated simply because a provider is unwilling to

9  perform the service at the price offered by the Medicaid agency.

10       In making their argument, Defendants emphasize that Medicaid law requires that no

11  recipients be denied a choice of willing and qualified providers.  Defendants contend that there is

12  no evidence that any the Plaintiffs were denied the choice of a willing and qualified provider.

13  Defendants further argue that if a particular provider decides to no longer provide services to a

14  Medicaid recipient, then that provider is no longer "qualified" or "willing" to "undertake" those

15  services.  Dkt. 175, at 19.  Defendants assert that a Medicaid recipient does not have the right to

16  choose a provider who withdraws from the program or who, like the providers here,  do not want

17  to accept the number of hours paid by DSHS.  Defendants argue that Plaintiffs' interpretation of

18  the choice of provider rule would require the Medicaid agency agree to any level of payment that

19  a provider might demand.  Finally, Defendants assert that the Medicaid free choice of provider

20  rules do not provide a freestanding implied right of action.

21       3. **ANALYSIS**

22       Class Plaintiffs assert that the Shared Living Rule violates free choice of provider laws,

23  arguing that under state and federal law, a state must permit a patient to choose any qualified

24  Medicaid provider of his or her choosing.  42 C.F.R. § 431.51(a)(1) provides that "recipients may

25  obtain services from any qualified Medicaid provider that undertakes to provide the services to

26  them."  Similarly,  42 U.S.C. § 1396a(a)(23) provides that a State plan for medical assistance

27  must

28

provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability on a prepayment basis), who undertakes to provide him such services[.]

In their previous motion for summary judgment (Dkt. 77 ), Class Plaintiffs sought damages under 42 U.S.C. § 1983, arguing that the Shared Living Rule violated Medicaid choice of provider requirements. However, the Court rejected this claim, holding that the Defendants are entitled to qualified immunity.

Here, Class Plaintiffs argue that the Shared Living Rule violated free choice of provider laws because some care recipients were forced to choose live-out providers in order to get their medical needs met. A premise underlying this argument is that some live-in providers refused to provide care recipients with required medical services as a result of the Shared Living Rule's 15 percent reduction of paid service hours.

In their present motion for summary judgment, Class Plaintiffs advance two different theories of recovery for DSHS's alleged violation of state and federal choice of provider laws. Class Plaintiffs assert that relief should be granted under RCW 74.08.080(3), or alternatively, that relief should be granted under the Implied Right of Action doctrine.

As outlined above, Courts consider the four *Orkin* factors in determining whether a statute gives rise to a private cause for action under the implied right of action doctrine. Here, Class Plaintiffs have not provided evidence of Congress's intent to create a private rights of action for violation of the Medicaid choice of provider rules. Therefore, Class Plaintiffs have failed to satisfy the elements required to support an implied right of action. Accordingly, Class Plaintiffs' claim for damages for Defendants' alleged violation of federal choice of provider law, premised upon the implied right of action doctrine, should be dismissed.

Class Plaintiffs also invite the Court to decide whether the Shared Living Rule violated RCW 74.39A.270(4), and whether such a violation would merit relief under RCW 74.08.080(3). As explained above, the instant order is limited to claims and remedies arising out of federal law. Therefore, the Court will not address these matters of state law at this time.

# H.    DUE PROCESS AND EQUAL PROTECTION CLAIM

### 1. *Class Plaintiffs' Motion for Summary Judgment (Dkt. 168)*

Class Plaintiffs argue that the Shared Living Rule should be found invalid because it violated the Due Process and the Equal Protection Clauses of the United States Constitution. Specifically, Class Plaintiffs assert that the Shared Living Rule violated the class members' due process and equal protection rights because its imposition of an irrebuttable presumption was not rationally related to a legitimate legislative goal.

Class Plaintiffs reject the DSHS's argument that the Shared Living Rule is rationally related to the state's legitimate interest in making need-based resource allocation decisions. Class Plaintiffs maintain that the living status of care providers is unrelated to whether the needs of the care recipients are met by informal supports. Class Plaintiffs content that the Shared Living Rule established an automatic denial of paid Medicaid benefits for essential shopping, meal preparation, and housekeeping services based on an irrebuttable presumption that a care provider would naturally provide those services informally and without compensation as a member of the household.

Class Plaintiffs note that the irrebuttable presumption was allegedly derived from the Draft In-Home Time Study. Class Plaintiffs argue that the *Jenkins* court noted that the Study failed to provide an explanation of how the 15 percent amount was derived from the Study's data. Class Plaintiffs insist that there is no rational relationship between the Shared Living Rule and the needs of the recipients. Class Plaintiffs cite several cases, including *Stanley v. Illinois*, 405 U.S. 645 (1972), *U.S. Dep't of Agic. v. Murry*, 413 U.S. 508 (1973), and *Jimenez v. Weinberger*, 417 U.S. 628 (1974), for the proposition that irrebuttable presumptions that bear no rational relation to a legitimate legislative interest are regularly struck down.

Class Plaintiffs maintain that the Shared Living Rule imposed the same type of irrebuttable presumption found invalid in several earlier cases, and that the disparate impact may have been eliminated had DSHS implemented some type of appeal procedure for the recipient or had the Rule been based on specific assessments determining the extent to which the shopping, meal

1   preparation, and housekeeping services benefitted the care providers as well as the recipients.

2       Class Plaintiffs maintain that the Shared Living Rule arbitrarily and unjustifiably deprived

3   the care recipients of paid care and deprived care providers of compensation for a significant

4   portion of their services, without regard to the actual facts of a given situation.

5       Class Plaintiffs also argue that the present case is distinguishable from *Weinberger v. Salfi*,

6   422 U.S. 749 (1975). Class Plaintiffs also argue that *Weinberger v. Salfi* did not overrule *Stanley*,

7   *Murry*, or *Jimenez*, but merely applied a more deferential standard of review limited to the unique

8   facts of *Salfi*. Class Plaintiffs further argue that *Salfi* was not upheld on the grounds that the

9   duration of marriage requirement was rationally related to the government's interest of providing

10  benefits only for persons who are likely to have become dependent on upon the wage earner.

11      Class Plaintiffs maintain that the Shared Living Rule resulted in care recipients with live-in

12  providers receiving fewer benefit hours than recipients in the same disability classification who

13  have care providers living outside the home. Therefore, Class Plaintiffs assert that although the

14  recipients were similarly situated, they were not treated alike. Class Plaintiffs further assert that

15  the Shared Living Rule required the live-in providers to perform the same services as live-out

16  providers without compensating them alike. Therefore, Class Plaintiffs maintain that the Shared

17  Living Rule violated the class members' due process and equal protection rights.

18      Class Plaintiffs argue that relief should be granted to the class under RCW 74.08.080(3).

19  Class Plaintiffs also seek relief pursuant to 42 U.S.C. § 1983.

20      2. *Defendants' Motion for Summary Judgment (Dkt. 167)*

21      Defendants argue that the Shared Living Rule did not violate the Equal Protection Clause or

22  the Due Process Clause of the United States Constitution, and that Defendants are immune from

23  these claims. Defendants maintain that both equal protection and due process require rational

24  basis review of the Shared Living Rule's classification of live-in versus non-live-in providers.

25      Defendants respond to Class Plaintiffs' allegation that "DSHS eliminated benefits for

26  Medicaid recipients without due process." Dkt. 68, at 11. Defendants point out that adjudicative

27  proceedings were available to challenge the number of hours authorized under the CARE tool.

28

1      Defendants respond to Class Plaintiffs' argument that irrebuttable presumptions violate

2  due process guarantees by noting that the cases that Class Plaintiffs cite for this proposition are all

3  from the early 1970s.  Defendants maintain that in 1975, the United States Supreme Court

4  rejected this approach in *Weinberger v. Salfi*, 422 U.S. 749 (1975).  Defendants argue that *Salfi*

5  stands for the proposition that an irrebuttable presumption does not, by itself, trigger heightened

6  scrutiny.  Defendants argue that the *Salfi* court concluded that the U.S. Constitution does not

7  preclude bright line rules so long as they are supported by a rational basis.  Defendants assert that

8  where a due process challenge involves a bright line rule allocating welfare benefits in a particular

9  manner, the *Salfi* rational basis test applies.

10      Defendants argue that the Shared Living Rule was rationally related to the legitimate state

11  interest in carefully allocating state resources, and that DSHS legitimately drew a bright line rule.

12  Defendants maintain that the state interest underlying the Shared Living Rule, to maximize the use

13  of the state's financial resources in directly meeting the needs of persons with functional

14  limitations, is legitimate.

15      Defendants also maintain that the Shared Living Rule was rationally related to this

16  legitimate state interest.  Defendants contend that DSHS considers several factors in determining

17  the number of paid long-term care hours allocated to individuals, including the availability of

18  informal supports.  Defendants assert the amount of assistance that recipients need and the

19  amount of paid assistance DSHS provides is to cover the gaps left by informal supports.

20  Defendants contend that the Shared Living Rule recognized that a live-in provider would perform

21  a portion of the covered tasks, benefitting the provider personally, in his or her role as a member

22  of the household, even if DSHS did not pay him or her to do so.  Defendants argue that because

23  the paid assistance provided by the DSHS was intended to fill the gaps left by informal supports,

24  it was rational to conclude that a recipient with a live-in provider had a lesser need for authorized

25  hours than one whose provider did not reside with him or her.

26      Defendants further argue that DSHS legitimately applied the Shared Living Rule without

27  opportunity for individualized determinations of the precise number of hours that a provider spent

28

ORDER - 44

on tasks that benefitted the entire household. Defendants assert that DSHS took steps to limit the scope of the shared living concept so as to not result in drastic underpayment by reducing benefits only by 15 percent, even though DSHS contends that research showed that the shared living contribution was much higher. According the research relied upon by DSHS, the percentage of time devoted to routing household tasks by providers who resided in the same household as their recipients was 33 percent to 42 percent. Defendants characterize the Shared Living Rule's 15 percent reduction as a deferentially drawn presumption.

Defendants argue that DSHS rationally concluded that the Shared Living Rule's 15 percent reduction was appropriate to protect against the inefficient expenditure of limited resources to pay for tasks that also benefitted the provider and the entire household, and which would also otherwise be provided as informal support. Defendants assert that DSHS rationally concluded that the difficulties in determining the precise percentage of shared living tasks in every case outweighed the marginal benefit of such precision.

Defendants also contend that state agencies and state employees sued in their official capacities are not liable for damages under 42 U.S.C. § 1983. Defendants cite *Will v. Michigan State Police*, 491 U.S. 58 (1989), for the proposition that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's [and thus is] no different from a suit against the State itself." Defendants argue that consistent with this holding, the request for damages under the due process and equal protection claims against the State of Washington, DSHS, and Defendants Arnold-Williams, Braddock and Leitch in their official capacities under 42 U.S.C. § 1983 must be dismissed.

Finally, Defendants argue that the individually named Defendants are entitled to qualified immunity under 42 U.S.C. § 1983. Defendants argue that even if the Court somehow concludes that the Shared Living Rule violated equal protection or due process principles, at the time the Shared Living Rule was promulgated, existing law would not have alerted a reasonable official that the rule violated these constitutional principles. Defendants assert that neither the Class Plaintiffs nor the *Jenkins* court have pointed to a case holding that providing different levels of

1  payments to different categories of providers violated equal protection or due process

2  requirements. Defendants also contend that many states operating home and community based

3  services programs similar to those at issue here differentiate among providers in determining both

4  who would be eligible paid providers and the rates at which they would be provided. Defendants

5  assert that the existence in other states, such as California, New York, Oregon, and Michigan, of

6  restriction similar to the Shared Living Rule speaks to the reasonableness of the named

7  Defendants's understanding that the rule did not violate the Constitution.

8      3. *Class Plaintiffs' Response (Dkt. 176)*

9      First, Class Plaintiffs challenged DSHS's assertion that adjudicative proceedings were

10  available to challenge the number of hours authorized under the CARE tool. Class Plaintiffs

11  assert that only "non-rule" aspects of the CARE tool are subject to challenge. Class Plaintiffs

12  contend that WAC 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 stripped away the administrative law judge's authority to declare

13  any of DSHS's rules invalid regardless of circumstances. Class Plaintiffs maintain that because

14  the Shared Living rule was embodied in an agency rule, the only recourse for care recipients was

15  to have it invalidated in Superior Court. Class Plaintiffs argue that DSHS failed to provide any

16  type of pre-deprivation hearing to the care recipients as required when the issue involves public

17  assistance benefits, and that DSHS violated procedural and substantive due process.

18      Class Plaintiffs argue that *Weinberger v. Salfi* is distinguishable from the present case.

19  Class Plaintiffs contend that *Salfi* is different from the present case because: 1) the irrebuttable

20  presumption in *Salfi* was much different than the Shared Living Rule; 2) DSHS was already

21  providing individualized assessments; 3) DSHS relied entirely upon a flawed Draft Time Study

22  that provided no basis for the Shared Living Rule; and 4) the *Salfi* court expressly stated that it

23  was not overruling prior Supreme Court cases on point like *Murry* and *Jiminez*.

24      Class Plaintiffs maintain that the *Jenkins* court determined that it made no sense for DSHS

25  to conduct annual assessments for each of the care recipients, including an evaluation of their

26  individualized needs for shopping, laundry, housekeeping, meal preparation, and wood supply

27  services, and then to irrebuttably override those individualized determinations through the Shared

28

Living Rule. Class Plaintiffs assert that in *Salfi*, individualized assessments were not performed and to implement them would have been costly to the State. Class Plaintiffs argue that this was not the case with the Shared Living Rule.

Class Plaintiffs argue that DSHS cannot satisfy the *Salfi* requirement that "the expense and other difficulties of individual determinations" justified the prophylactic Shared Living Rule. Dkt. 176, at 23, quoting *Salfi*, 417 U.S. at 777. Class Plaintiffs maintain that unlike *Salfi*, DSHS here continued to conduct annual assessments for each of the care recipients, and that there would have been no additional cost to DSHS for conducting individualized determinations. Class Plaintiffs assert that DSHS cannot satisfy the *Salfi* requirement of demonstrating the costs of individualized determinations outweighed the benefit of the irrebuttable Shared Living Rule. For this reason alone, Class Plaintiffs argue, DSHS should be found to have violated due process.

Class Plaintiffs also maintain that DSHS has brought forth no evidence that providing the Shared Living Rule services would significantly impair the public assistance program funding to a point where there would be a reduction in the scope of services. Class Plaintiffs argue that the Shared Living Rule does not support the legislative intent of the public assistance programs to provide for the individual needs of the care recipients in home and community-based settings rather than in nursing homes. Class Plaintiffs contend that a recipients's need is not rationally related to the live-in status of his or her care provider, and that the living status of the provider was an arbitrary distinction. In sum, Class Plaintiffs insist that the Shared Living Rule is not rationally related to any legitimate government interest.

Next, Class Plaintiffs assert that the 15 percent cut in paid care benefits bears no rational relation to a legitimate legislative goal because it is entirely based upon the flawed "Draft" In-Home Time Study, which does not support the underlying presumption of the Shared Living Rule. Class Plaintiffs maintain that the Study was the only document relied upon by the Department to support its automatic and irrebuttable 15 percent cut to the base hours of the care recipients. Class Plaintiffs argue that their expert witness, Frank G. Fox, Ph.D., determined that the Study provides no support whatsoever for the Shared Living Rule. Class Plaintiffs maintain that because

1 the Study provided the only information DSHS relied upon to support its 15% cut in paid

2 services, and because the Study was not reliable, DSHS's actions must be found to have been

3 arbitrary and capricious.

4 　　　　Class Plaintiffs also argue that DSHS's selective quotes from RCW 74.39.005 downplay

5 the primary legislative intent of providing for the individual needs of the care recipients so that

6 they can continue living in home and community based settings rather than being cared for in

7 nursing homes.  Class Plaintiffs contend that DSHS's objective of maximizing State resources

8 does not mean that the legislature intended to dispense with the objective of providing for the

9 individualized needs of the individuals.

10 　　　　Class Plaintiffs assert that DSHS's claim that it is trying to fill gaps with respect to friends,

11 family, and household members should be disregarded.  Specifically, Class Plaintiffs note DSHS's

12 contention that "because the assistance provided was intended to fill needs not already provided

13 by friends, family, household members and other informal supports, it was rational to conclude a

14 recipient with a live-in provider had a lesser need for authorized hours than one whose provider

15 did not reside with him."  Class Plaintiffs respond to this contention by noting that many care

16 recipients with live-out providers also live with friends, family, household members and other

17 informal supports, so it is unclear how DSHS's contention supports the DSHS's position.

18 　　　　Finally, Class Plaintiffs argue that the individually named Defendants are not entitled to

19 qualified immunity to avoid liability under 42 U.S.C. § 1983.  Class Plaintiffs argue that the

20 unlawfulness of DSHS' actions were apparent, and that therefore, qualified immunity does not

21 apply.  Class Plaintiffs also urged that DSHS's allegation that it was adjusting "payment levels"

22 should be disregarded.

23 　　　　4. *Defendants' Response (Dkt. 175)*

24 　　　　Defendants, in their response, reiterate many of the points raised in their motion for

25 summary judgment.  Again, Defendants stress that the Shared Living Rule must only survive

26 rational basis review, and that the burden of proving that a state regulation is not rationally related

27 to a legitimate governmental interest is on the challenger.  Again, Defendants note that Class

28

1  Plaintiffs rely on early 1970s cases to support their argument, and that the *Weinberger v. Salfi*

2  analysis is appropriate in this case.  Defendants also reiterate their earlier arguments for why the

3  Shared Living Rule is rationally related to a legitimate legislative purpose.  Defendants also argue

4  that the facts of the present care are distinguishable from the facts of *Dillingham v. INS*, 267 F.3d

5  996 (9th Cir. 2001), and that the difficulty of individualized determinations of the number of hours

6  spent on household tasks outweighs their benefit, considering the especially deferential 15 percent

7  deduction.

8      Defendants also reassert that state agencies and state employees sued in their official

9  capacities are not liable for damages under 42 U.S.C. § 1983, and that for the same reasons that

10  the Court found the individually named Defendants are entitled to qualified immunity under §

11  1983 for the Medicaid claims, these same named Defendants are entitled to qualified immunity in

12  this case.

13      5.  *Defendants' Reply (Dkt. 185)*

14      In their reply, Defendants first focus on the remedies sought by Class Plaintiffs.

15  Defendants contend that Class Plaintiffs concede that damages are not available for 42 U.S.C. §

16  1983 claims against the State, DSHS or employees named in their official capacities.  *See* Dkt.

17  113, at 30.  Therefore, Defendants argue that the only remaining avenue for damages on these

18  claims is 42 U.S.C. § 1983 as it applies to the individually-named Defendants.

19      Defendants argue that unless Plaintiffs can show that the alleged lack of rational basis

20  would have been clear to a reasonable official in the Defendants' position, then Class Plaintiffs are

21  not entitled to the remedy that they seek.  Defendants assert that rational basis review is highly

22  deferential, and that the United States Supreme Court has recognized that lines often must be

23  drawn when the state is faced with allocating scarce resources.

24      Defendants also respond to Class Plaintiffs' contention that the difficulties of

25  individualized shared-living determinations do not outweigh their benefit.  Defendants argue that

26  although DSHS conducts annual assessments, the CARE tool is not designed to assess the

27  percentage of household chores that actually benefit the entire household, including the provider,

28

1  versus the percentage of chores that benefit only the recipient. Defendants maintain that the

2  Shared Living Rule reasonably obviated the need for such particularity.

3  Defendants contend that an inherent benefit of the Shared Living Rule was its bright line

4  character. Defendants maintain that the least expensive method of individualized assessment

5  relies on self-reporting, and that because the allocation of paid hours is at stake, self-reporting

6  creates an incentive and opportunity for providers and recipients to underestimate the percentage

7  of household chores that also benefit the provider. Defendants argue that a bright line rule

8  avoided this pitfall. Defendants also maintain that the bright line nature of the Shared Living Rule

9  helped to achieve uniformity among assessments and fair allocation of limited resources among

10 competing individuals.

11 Defendants also respond to the Class Plaintiffs' challenge to the Time Study. Defendants

12 assert that the Study was conducted by Jeannette Semke, MSW, Ph.D., who was not a DSHS

13 employee, and who Defendants believed had the experience and education necessary to assist

14 them with the Time Study. Defendants argue that Class Plaintiffs misunderstand both the Study

15 and its use in developing the Shared Living Rule, and that the Time Study supported the 15

16 percent deduction and that the rule was rationally related to the legislative intent not to pay for

17 informal supports.

18 Finally, Defendants reassert their argument that Defendants would be entitled to qualified

19 immunity because even if the Shared Living Rule constituted a violation of due process or equal

20 protection, the violation was not so clearly established that a reasonable person would have

21 recognized it at te time the rule was implemented. Defendants argue that the individually-named

22 Defendants were justified in relying on legislative directive, the results of the Time Study, and the

23 prospect of deferential rational basis review to conclude that the Shared Living Rule did not

24 violate the Constitution.

25 6. **ANALYSIS**

26 The Fourteenth Amendment protects individuals against the deprivation of liberty or

27 property by the government without due process. *Portman v. County of Santa Clara,* 995 F.2d

28

1  898, 904 (9th Cir.1993). A § 1983 claim based upon the deprivation of procedural due process

2  thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a

3  deprivation of the interest by the government; and (3) lack of process. *Id.*

4       The Equal Protection Clause prohibits a state from denying to any person within its

5  jurisdiction the equal protection of the laws, which is essentially a direction that all persons

6  similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473

7  U.S. 432, 439, (1985); *Jones Intercable v. City of Chula Vista*, 80 F.3d 320, 327 (9th Cir.1996).

8  The court should a apply a strict scrutiny analysis only if an allegedly discriminatory classification

9  disadvantages a suspect class or burdens the exercise of a fundamental right. *City of Cleburne*,

10 473 U.S. at 440. An intermediate level of scrutiny is generally applied only to classifications

11 based on gender. *Mississippi University for Women v. Hogan*, 458 U.S. 718, 724 (1982);

12 *McQueary v. Blodgett*, 924 F.2d 829, 834 (9th Cir. 1991). When a suspect class is not implicated,

13 the court must determine whether the alleged discrimination is patently arbitrary and bears no

14 rational relationship to a legitimate governmental interest. *Vermouth v. Corrothers*, 827 F.2d 599,

15 602 (9th Cir. 1987) (*quoting Young v. United States Parole Comm'n*, 682 F.2d 1105, 1109 (5th

16 Cir.), *cert. denied*, 459 U.S. 1021 (1982)).

17      Here, Plaintiffs have named the State of Washington and the Department of Social and

18 Health Services as Defendants. Plaintiffs have also named Robin Arnold-Williams, Dennis

19 Braddock, and Kathy Leitch as Defendants, in both their official and individual capacities. Dkt.

20 165.

21      Defendants, in their motion for summary judgment, argue that state agencies and state

22 employees sued in their official capacities are not liable for damages under 42 U.S.C. § 1983.

23 Defendants cite *Will v. Michigan State Police*, 491 U.S. 58, 64, 71 (1989), in which the United

24 States Supreme Court concluded that a State is not a person within the meaning of § 1983, and

25 that "a suit against a state official in his or her official capacity is not a suit against the official but

26 is rather a suit against the official's office [and thus is] no different from a suit against the State

27 itself." Plaintiffs failed to respond to this argument in their response, and instead reasserted the

28

1    argument that individually named defendants are not entitled to qualified immunity under 42

2    U.S.C. § 1983.

3          Defendants' analysis on this point is correct.  Therefore, the State of Washington and

4    DSHS are immune from Plaintiffs' due process and equal protection claim under 42 U.S.C. §

5    1983.  Additionally, Defendants Robin Arnold-Williams, Dennis Braddock, and Kathy Leitch,

6    insofar as they were acting in their official capacities, are also immune from this claim.  Therefore,

7    the remaining Defendants to Plaintiffs' claim are Robin Arnold-Williams, Dennis Braddock, and

8    Kathy Leitch, in their individual capacities.

9          A threshold issue for Plaintiffs' due process and equal protection claim is whether these

10   remaining Defendants are entitled to qualified immunity.  Government officials who are sued in

11   their individual capacities have qualified immunity from suit absent evidence of incompetence or

12   knowing violation of the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule

13   shields government officials from suit in order to afford relief to plaintiffs without unduly

14   hindering officials' performance of their governmental duties. *Id.* Qualified immunity is not merely

15   a defense to liability; it is an entitlement to immunity from suit in the first place. *See Devereaux v.*

16   *Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070

17   (9th Cir. 2001).

18         The defense of qualified immunity has three steps. First, there must be a violation of a

19   constitutional right, as explained in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At this stage, the

20   facts are viewed in the light most favorable to the injured party. *Id.* Absent such a violation, there

21   is no need to pursue the remaining qualified immunity analysis. *Id.*

22         Second, the right must be so clearly established that a reasonable officer would be on

23   notice of its existence and parameters. *Id.* at 199; *Romero v. Kitsap County*, 931 F.2d 624, 627

24   (9th Cir. 1991). This burden rests with the plaintiff. *Romero*, 931 F.2d at 627. The plaintiff may

25   establish that the conduct at issue was previously held unlawful or that the unlawfulness is

26   apparent. *See Anderson*, 483 U.S. at 640.

27         Third, the officer must demonstrate that a reasonable officer could have believed that the

28

1  conduct was lawful. *See Romero*, 931 F.2d at 627. Qualified immunity is "designed to spare a

2  defendant not only of unwarranted liability, but unwarranted demands customarily imposed upon

3  those defending a long drawn-out lawsuit." *Devereaux*, 218 F.3d at 1052.

4  　　　Here, Class Plaintiffs allege that the care recipients were entitled to a pre-deprivation

5  hearing, and that DSHS's denial of a pre-deprivation hearing violated procedural due process.

6  Dkt. 176, at 32. Plaintiffs also assert that the Draft Study that DSHS relied upon was materially

7  and statistically invalid, and that when welfare benefits are involved, due process requires more

8  than just a simple showing that the action will result in cost savings. Plaintiffs argue that the

9  Defendants' reliance on such a minimal showing dispensed with all the other stated legislative

10 intentions underlying the public assistance programs, and that the unlawfulness of the Defendants'

11 conduct is apparent. Finally, Class Plaintiffs argue that there are several cases, including *Jenkins*,

12 holding that due process was violated when benefits were provided to some care recipients and

13 not to others. Presumably, Class Plaintiffs are asserting that these cases also make the

14 unlawfulness of Defendants' conduct apparent.

15 　　　Defendants maintain that even if the Shared Living Rule violated due process or equal

16 protection principles, at the time the Shared Living Rule was promulgated, existing law would not

17 have alerted a reasonable official that the rule violated constitutional principles. Defendants stress

18 that rational basis is the appropriate standard here, and that rational basis review is highly

19 deferential. Defendants maintain that qualified immunity is proper unless the Plaintiffs can show

20 that the alleged lack of rational basis would have been clear to a reasonable official in the

21 Defendants' position.

22 　　　Defendants maintain that Plaintiffs have pointed to no cases holding that providing

23 different levels of payments to different categories of providers violated equal protection or due

24 process requirements. Defendants also stress that many states, such as California, New York,

25 Michigan, and Oregon, operate home and community based services programs similar to those at

26 issue here, and these states differentiate among providers in determining who would be eligible

27 paid providers and what rates would be paid. Defendants argue that the existence of restrictions

28

ORDER - 53

1  in other states similar to, or more strict than, the Shared Living Rule speaks to the reasonableness

2  of the Defendants' understanding that the Rule did not violate due process or equal protection.

3  Finally, Defendants note that three justices of the Washington Supreme Court found the Shared

4  Living Rule to be consistent with the Medicaid comparability requirements in *Jenkins*, which is

5  strong evidence that the alleged equal protection and due process violation was not apparent.

6          Here, Defendants are correct in their assertion the alleged due process and equal

7  protection violations resulting from the Shared Living Rule would not have been apparent to a

8  reasonable official.  Defendants are also correct in their assertion that rational basis review is the

9  applicable standard here.  The Court is unaware of any analogous cases that would have made the

10  unlawfulness of the Shared Living Rule apparent to the individually named Defendants.  Even if

11  Class Plaintiffs' rights to due process and equal protection were violated, given the facts

12  construed in Class Plaintiffs' favor, the constitutional issues were not clearly established.

13          In sum, Plaintiffs have failed to meet their burden of establishing that the rights at issue

14  here were so clearly established that a reasonable officer would be on notice of their existence and

15  parameters.  Defendants are entitled to qualified immunity on Plaintiffs' claim for violation of due

16  process and equal protection under 42 U.S.C. § 1983, and accordingly, this claim should be

17  dismissed.  As discussed herein, the Court declines to consider whether Plaintiffs are entitled to

18  relief on their Due Process and Equal Protection claim pursuant to RCW 74.08.080(3).

19  **I.      RESTITUTION**

20          Class Plaintiffs request that the Court award restitution under the Washington

21  Administrative Procedures Act (WAPA) (RCW 34.05) and RCW 74.08.080.  Defendants, in their

22  response, request that the Court exercise supplemental jurisdiction and consider these state

23  claims.  Defendants further request that these claims be dismissed as a matter of law.

24          The motions for summary judgment presently before the Court concern federal claims and

25  remedies.  The Court will not decide matters of state law at this time.  Accordingly, the parties'

26  request that the Court rule on the issue of restitution under RCW 34.05 and RCW 74.08.080 is

27  denied.

28

**J.     COLLATERAL ESTOPPEL**

In their motion for summary judgment, Class Plaintiffs urge the Court to apply collateral estoppel against the Department on the issues of whether the Shared Living Rule violated Medicaid comparability and whether the care recipients should be provided relief under the State public assistance protection law. Alternatively, Class Plaintiffs request that the Court certify the issue of non-mutual collateral estoppel to the Washington State Supreme Court. Defendants, in their response, insist that collateral estoppel does not apply in this case.

In the order addressing the parties' previous set of motions for summary judgment, the Court instructed the parties to submit briefs regarding the remaining federal claims. This order is limited to the parties' federal claims. It is not appropriate for the Court to issue advisory opinions or decide issues of state law not necessary for the adjudication of the matter before it. The federal claims in these motions do not require resolution of whether the Shared Living Rule violated Medicaid comparability laws. The Court declines to rule on the issue of collateral estoppel and/or whether the Shared Living Rule violated Medicaid comparability laws.

**K.  SUPPLEMENTAL JURISDICTION**

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy. The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

By this order, all remaining federal claims are dismissed. No federal "nexus" remains. Class Plaintiffs' remaining state law claims raise novel and complex issues of state law, and predominate over the federal claims. Indeed, some of the issues in this case have already been considered by the state courts in *Jenkins*, and the state courts are waiting for the opportunity to

rule on other issues in *SEIU Healthcare 775NW, et. al. v. Arnold-Williams*, King County Superior Court Case No. 07-2-17710-8. The remaining state law claims can be efficiently resolved by the Washington state courts. Accordingly, this Court declines to exercise supplemental jurisdiction over Class Plaintiffs' state law claims.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion to Strike the Declaration of Frank Fox (Dkt. 185) is **DENIED**. Class Plaintiffs' Cross Motion to Strike a Portion of the Testimony from Bea-Alise Rector (Dkt. 194) is **DENIED**.

It is further **ORDERED** that Class Plaintiffs' Omnibus Motion for Partial Summary Judgment (Dkt. 168) is **DENIED**. Defendants' Motion for Partial Summary Judgment Regarding Remaining Federal Claims (Dkt. 167) is **GRANTED**. Class Plaintiffs' claims for: (1) violation of the American with Disabilities Act and the Rehabilitation Act; (2) violation of the Takings Clause of the Fifth Amendment of the United States Constitution; (3) impairment of the Contract Clause of the United States Constitution; (4) violation of Medicaid Comparability requirements pursuant to the implied right of action doctrine; (5) violation of federal Medicaid Choice of Provider requirements pursuant to the implied right of action doctrine; and (6) violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, are **DISMISSED**. It is further **ORDERED** that the remaining state law claims are **REMANDED** to Thurston County Superior Court.

DATED this 8th day of December, 2008.

ROBERT J. BRYAN
United States District Judge

ORDER - 56